[No. C034127. Third Dist. Nov. 14, 2002.]

MARIN HEALTHCARE DISTRICT, Plaintiff and Appellant, v. SUTTER HEALTH et al., Defendants and Respondents.

## COUNSEL

Steefel, Levitt & Weiss, Stephen S. Mayne and David T. Vanalek for Plaintiff and Appellant.

McDonough, Holland & Allen and Richard E. Brandt for Defendant and Respondent Sutter Health.

Keegin, Harrison, Schoppert & Smith, Jeffrey S. Schoppert and Wendy L. Wyse for Defendants and Respondents Marin General Hospital and Marin Community Health.

## OPINION

**KOLKEY, J.**—In this action, we must determine whether the judicially created doctrine enunciated in *Hoadley v. San Francisco* (1875) 50 Cal. 265 (*Hoadley*)—that the statute of limitations does not apply to actions by the state to recover property dedicated for public use against an adverse possessor—should be extended to bar the application of the statute of limitations to the state's action to void a *lease* of public-use property. Because the purpose of the *Hoadley* doctrine is to prevent public-use property that the state cannot directly alienate from being indirectly alienated through the passage of time—that is, through the statute of limitations—we conclude that the doctrine has no application to a lease of property which the state is authorized to make.

In this case, the plaintiff, Marin Healthcare District (the District), a political subdivision of the state, brought suit to recover possession of a publicly owned hospital and related assets that it had leased and transferred

in 1985 to defendant Marin General Hospital (Marin General)[1] pursuant to the terms of the Local Health Care District Law (Health & Saf. Code, § 32000 et seq.). The District's complaint alleges that the 1985 agreements are void because its chief executive and legal counsel had a financial interest in the agreements at the time of their execution, in violation of Government Code section 1090, which prohibits state employees from having any financial interest in any contract made by them or by any body of which they are members.[2] But because the action was filed 12 years after the agreements were signed, the trial court concluded that the suit was time-barred.

The District contends here—as it did in the trial court—that under the California Supreme Court's decision in *Hoadley*, "a suit by a governmental entity to recover public-use property from a private party to whom it was illegally or invalidly transferred is *never* barred by *any* statute of limitations."

We conclude, to the contrary, that *Hoadley* stands for the more narrow rule that "property held by the state in trust for the people cannot be lost through adverse possession." (*People v. Shirokow* (1980) 26 Cal.3d 301, 311 [162 Cal.Rptr. 30, 605 P.2d 859].) Other cases have only extended the doctrine to prevent the statute of limitations from barring the recovery of public-use property that the state had no authority to alienate. (E.g., *Sixth District etc. Assoc. v. Wright* (1908) 154 Cal. 119, 129-130 [97 P. 144].) The doctrine has no application to the lease of property into which the state is authorized by law to enter (and which property the state will recover at the end of the lease term).

Extension of the *Hoadley* doctrine here would conflict with the Legislature's determination to apply statutes of limitations to actions brought by the state, including the type pleaded here. Specifically, ever since the first session of the California Legislature, " '[t]he general legislative policy of California [has been] that the state shall be bound by its statute of limitations with respect to the bringing of actions for the enforcement of any and all such rights as may accrue to the state.' " (*People v. Osgood* (1930) 104

---

[1]Codefendant Marin Community Health is the sole member of defendant Marin General. After the agreements in issue were signed, another codefendant, Sutter Health, became the sole member of Marin Community Health.

[2]Government Code section 1090 provides: "Members of the Legislature, state, county, district, judicial district, and city officers or employees shall not be financially interested in any contract made by them in their official capacity, or by any body or board of which they are members. Nor shall state, county, district, judicial district, and city officers or employees be purchasers at any sale or vendors at any purchase made by them in their official capacity. [¶] As used in this article, 'district' means any agency of the state formed pursuant to general law or special act, for the local performance of governmental or proprietary functions within limited boundaries."

Cal.App. 133, 135 [285 P. 753].) While there are good policy reasons both for and against subjecting void leases of public property to the statute of limitations, we must defer to the Legislature's determination that the state, like other parties, is bound by the statute of limitations. We shall therefore affirm the judgment barring this 12-year-delayed suit from unsettling the balance of Marin General's lease term.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts underlying this action are undisputed.

The District, a political subdivision of the State of California, is a local health care district organized and operating under the provisions of the Local Health Care District Law (Health & Saf. Code, § 32000 et seq.). The District owns an acute care hospital facility located in Marin County.

The statutory scheme governing local health care districts permits such districts to delegate pursuant to a lease of up to 30 years the responsibility of operating and maintaining a district-owned hospital (Health & Saf. Code, § 32126), and authorizes them to transfer the assets to a nonprofit corporation "to operate and maintain the assets" (Health & Saf. Code, § 32121, subd. (p)(1)).[3] "The Legislature's stated reason for allowing such transfers [was] to permit local hospital districts 'to remain competitive in the ever changing health care environment . . . .' (Stats. 1985, ch. 382, § 5, p. 1556.)" (*Yoffie v. Marin Hospital Dist.* (1987) 193 Cal.App.3d 743, 746 [238 Cal.Rptr. 502].)

In or about November 1985, pursuant to those statutory provisions, the District leased the hospital's facilities and transferred certain of the District's assets used in the operation of the hospital, including cash, accounts receivable, and inventory, to defendant Marin General, a nonprofit public benefit corporation. The relevant agreements included a 30-year lease agreement and an agreement for transfer of assets (collectively, the 1985 contracts). Marin General has continuously operated the hospital facility since 1985.

At the time the 1985 contracts were entered, the District's chief executive officer was Henry J. Buhrmann. However, while Buhrmann was still employed as the District's chief executive officer, he became president and chief executive officer of Marin General and signed the 1985 contracts on

---

[3]The applicable code provisions have been amended several times since 1985 when the lease here was entered. Health and Safety Code section 32121 was amended in 1986, 1988, 1989, 1990, 1992, 1993, 1994, 1995, 1996, and 1998; Health and Safety Code section 32126 was amended in 1992, 1993, 1994, and 1998. (See 41 West's Ann. Health & Saf. Code (1999 ed.) foll. §§ 32121, 32126, pp. 242, 257.)

behalf of *Marin General*. Two of the District's directors executed the contracts on the District's behalf. Moreover, the District's legal counsel, Quentin L. Cook, became legal counsel to Marin General before the 1985 contracts were executed. And when Marin General later combined to form another health care entity, Cook became chief executive officer of that entity.

In November 1997, nearly 12 years after the 1985 contracts were signed, the District filed the instant action against Marin General and the affiliated defendants, Marin Community Health and Sutter Health. (See fn. 1, *ante*.) The operative (first amended) complaint alleges that at the time the 1985 contracts were entered, Buhrmann's and Cook's simultaneous employment by Marin General and the District created a prohibited financial interest in those contracts within the meaning of Government Code section 1090. That statute prohibits state, county, district, and city officers or employees from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." (*Ibid.*)[4] And because the 1985 contracts were purportedly made in violation of Government Code section 1090, the complaint alleges that the contracts are void under Government Code section 1092.[5]

The first and second causes of action of the complaint seek a declaration that the 1985 contracts are void by virtue of Buhrmann's or Cook's alleged financial interest in the contracts and that therefore the District is entitled to recover the assets transferred by the 1985 contracts. The District also seeks to impose a constructive trust on all hospital assets (the fifth cause of action), to conduct an accounting of the assets transferred under the 1985 contracts and their proceeds (the sixth cause of action), and to direct defendants to deliver the assets to the District (the seventh cause of action).[6]

Defendants admitted the existence of a controversy concerning the District's claim that the 1985 contracts are void, denied any wrongdoing, and alleged that the causes of action based on the purported invalidity of the 1985 contracts (the first, second, fifth, sixth, and seventh causes of action) were barred by the applicable statutes of limitations.

---

[4]See footnote 2, *ante*, for the full text of Government Code section 1090.

[5]Government Code section 1092 states: "Every contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein. No such contract may be avoided because of the interest of an officer therein unless such contract is made in the official capacity of such officer, or by a board or body of which he is a member."

[6]The District's other causes of action have been dismissed.

Defendants then brought a motion for summary adjudication with respect to the first, second, fifth, sixth, and seventh causes of action on the grounds that they were barred by all applicable statutes of limitations.[7] In support of their motion, defendants argued that the gravamen of the District's complaint was a claim that the 1985 contracts were void in violation of Government Code section 1092. As such, they claimed that the suit was an action "other than for the recovery of real property" within the meaning of Code of Civil Procedure section 335 et seq. and was barred by the applicable statutes of limitations.

The District, in turn, moved for summary adjudication of, among other things, "defendants' affirmative defense of the statute of limitations." Relying on the common law principle adopted by the California Supreme Court in *Hoadley, supra,* 50 Cal. 265, the District argued, both in support of its motion and in opposition to defendants' motion, that under settled case law, "a suit by a governmental entity to recover public-use property from a private party to whom it was illegally or invalidly transferred is *never* barred by *any* statute of limitations."

The trial court rejected the District's purported application of *Hoadley* and granted defendants' motions. In its tentative decision, which was subsequently incorporated into the judgment, the trial court opined in part that the "contracts here are fundamentally different from those in the *Hoadley* line of cases. The 1985 lease and sale of assets were legitimate contracts. Violation of [Government Code] Section 1090 can result in them being declared void. This is not like the *Hoadley* line of cases where the orig[i]nal transactions had no legitimacy. Statutes of limitations do attach to claims seeking to have contracts declared void based on the nature of the claim asserted. . . . The issue here then is what limitations period applies to actions brought under [Government Code] Section 1090. *Schaef[]er v. Berinstein* [(1960) 180 Cal.App.2d 107 [4 Cal.Rptr. 236], disapproved on another point in *Jefferson v. J. E. French Co.* (1960) 54 Cal.2d 717, 719-720 [7 Cal.Rptr. 899, 355 P.2d 643]] is on point and stands for the proposition that the nature of the underlying right sued on will determine the applicable statute." (Italics added.)

The trial court then concluded that the appropriate statute of limitations for the District's claims concerning the validity of the 1985 contracts under Government Code section 1092 was the four-year catchall provision of

---

[7]Marin General and Marin Community Health filed a joint motion for summary adjudication; Sutter Health filed a separate motion. However, as the two motions raise essentially the same issues, we shall refer to the defendants' motions for summary adjudication in the singular.

Code of Civil Procedure section 343, and applying that statute, ruled that the District's claims were time-barred.

The parties thereafter settled the remaining claims in the complaint and stipulated to entry of judgment incorporating the trial court's ruling on the statute of limitations.

## DISCUSSION

### I. *Standard of Review*

■ "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) We review independently an order granting summary judgment or summary adjudication of issues. (*Id.* at p. 860; *Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

■ Although resolution of a statute of limitations defense normally poses a factual question reserved to the trier of fact, summary adjudication will nonetheless be proper "if the court can draw only one legitimate inference from uncontradicted evidence regarding the limitations question." (*City of San Diego v. U.S. Gypsum Co.* (1994) 30 Cal.App.4th 575, 582 [35 Cal.Rptr.2d 876]; *FNB Mortgage Corp. v. Pacific General Group* (1999) 76 Cal.App.4th 1116, 1126 [90 Cal.Rptr.2d 841].) This is such a case.

### II. *The Causes of Action are Subject to the Statute of Limitations*

The gravamen of the District's claims is that the 1985 contracts are void as a matter of law because its chief executive officer and counsel each had a financial interest in the contracts in violation of Government Code section 1090. It is settled that "a contract in which a public officer is interested is *void,* not merely voidable. [Citations.]" (*Thomson v. Call* (1985) 38 Cal.3d 633, 646, fn. 15 [214 Cal.Rptr. 139, 699 P.2d 316].)

But the District refrained from filing suit for the first 12 years of its 30-year lease. It argues that "under the rule confirmed in [*Hoadley*], a conveyance of public-use property that was not valid and effective when it was made can be attacked, and the property reclaimed by the public, regardless of how much time has passed."

■ There are certainly good policy arguments both for and against applying a limitations period to an action to void a lease of public property.

On the one hand, "[t]he purpose of statutes of limitations is to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." (*Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379, 1387 [49 Cal.Rptr.2d 166], citing *Telegraphers v. Ry. Express Agency* (1944) 321 U.S. 342, 348-349 [64 S.Ct. 582, 586, 88 L.Ed. 788, 792]; accord, *Wood v. Elling Corp.* (1977) 20 Cal.3d 353, 362 [142 Cal.Rptr. 696, 572 P.2d 755].) Statutes of limitations also serve many other salutary purposes—some of which are relevant to this case—including protecting settled expectations; giving stability to transactions; promoting the value of diligence; encouraging the prompt enforcement of substantive law; avoiding the retrospective application of contemporary standards; and reducing the volume of litigation. (*Board of Regents v. Tomanio* (1980) 446 U.S. 478, 487 [100 S.Ct. 1790, 1796-1797, 64 L.Ed.2d 440, 449]; *Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395-396 [87 Cal.Rptr.2d 453, 981 P.2d 79]; *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 899 [218 Cal.Rptr. 313, 705 P.2d 886]; Ochoa & Wistrich, *The Puzzling Purposes of Statutes of Limitation* (1997) 28 Pacific L.J. 453.)

On the other hand, courts have noted that cases should be decided on their merits (see *Norgart v. Upjohn Co., supra,* 21 Cal.4th at p. 396) and that "[t]he public is not to lose its rights through the negligence of its agents" in failing to bring suit promptly. (*Board of Education v. Martin* (1891) 92 Cal. 209, 218 [28 P. 799].)

However, as a court, we must defer to the Legislature's judgment on which of these two policies to adopt. As our Supreme Court stated in a somewhat similar circumstance, "[t]o establish any particular limitations period under any particular statute of limitations entails the striking of a balance between the two [policies]. To establish any such period under any such statute belongs to the Legislature alone [citation], subject only to constitutional constraints [citation]." (*Norgart v. Upjohn Co., supra,* 21 Cal.4th at p. 396.)

As shown below, the Legislature has expressly addressed the application of statutes of limitations to actions brought by the state or its agencies.

### A. *The Application of Statutes of Limitations to a Public Entity*

The parties agree that the District is a political subdivision of the state. We thus first turn to whether the Legislature intended to apply a statute of limitations to a suit by a state entity to void a contract in violation of Government Code section 1092.

"The rule quod nullum tempus occurrit regi—that the sovereign is exempt from the consequences of its laches, and from the operation of statutes of limitations—appears to be a vestigial survival of the prerogative of the Crown," but is nowadays premised on considerations of public policy. (*Guaranty Trust Co. v. U.S.* (1938) 304 U.S. 126, 132 [58 S.Ct. 785, 788, 82 L.Ed. 1224, 1227-1228].) " 'The true reason . . . is to be found in the great public policy of preserving the public rights, revenues, and property from injury and loss, by the negligence of public officers.' " (*Ibid.*)

■ Accordingly, "the implied immunity of the domestic 'sovereign,' state or national, has been universally deemed to be an exception to local statutes of limitations where the government, state or national, is not expressly included . . . ." (*Guaranty Trust Co. v. U.S., supra,* 304 U.S. at p. 133 [58 S.Ct. at p. 789, 82 L.Ed. at p. 1228].)

This is the rule in California: The rights of the sovereign "are not barred by lapse of time unless by legislation the immunity is expressly waived." (*City of L. A. v. County of L. A.* (1937) 9 Cal.2d 624, 627 [72 P.2d 138, 113 A.L.R. 370].)[8]

But sections 315 and 345 of the Code of Civil Procedure[9] expressly waive the state's legislative immunity by applying statutes of limitations to various types of actions by the state and its agencies. "That it is not the policy of this commonwealth not to be bound by any statute of limitations is made clear by certain enactments which date back to the first session of the state legislature. (Code Civ. Proc., [§§] 315, 317, 345.) . . . 'The general legislative policy of California is that the state shall be bound by its statute of limitations with respect to the bringing of actions for the enforcement of any and all such rights as may accrue to the state.' " (*People v. Osgood, supra,* 104 Cal.App. at p. 135.)

Title 2 of part 2 (commencing with § 312) addresses general statutes of limitations. Section 312, which is part of chapter 1 of title 2, reflects the Legislature's historical preference for limiting the time within which civil actions may be initiated: "Civil actions, *without exception,* can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute." (Italics added.) Chapter 2 of title 2 addresses

---

[8]Some courts have somewhat broadened this standard and ruled that statutes of limitations do not bind the state and its agencies "unless they do so expressly *or by necessary implication.*" (E.g., *Philbrick v. State Personnel Board* (1942) 53 Cal.App.2d 222, 228 [127 P.2d 634], italics added.)

[9]Unless otherwise designated, all further statutory references (including statutory references to chapters and title) are to the Code of Civil Procedure.

the time for commencing actions for the recovery of real property (§ 315 et seq.), while chapter 3 (§ 335 et seq.) addresses the time for commencing actions other than for the recovery of real property. In both cases, the Legislature has expressly subjected the state to the limitations periods.

With respect to actions for the recovery of real property, section 315 provides that "[t]he people of this State will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the people to the same, unless: [¶] 1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced . . . ." "The words 'right or title' in this passage are to be construed to mean 'cause of action.'" (*People v. Kings Co. Development Co.* (1918) 177 Cal. 529, 534 [171 P. 102]; accord, *People v. Chambers* (1951) 37 Cal.2d 552, 556 [233 P.2d 557] (*Chambers*).)

■ Thus, if the present action is deemed to seek the recovery of real property under chapter 2 of title 2 "by reason of the right or title of the people to the same," this 12-year-delayed action, brought by a state entity, would be subject to (and as we shall show, barred by) the 10-year limitations period specified in section 315.

On the other hand, if this action is deemed other than for the recovery of real property, it comes under chapter 3 of title 2 (commencing with section 335).[10] But section 345 expressly waives the state's immunity from *any* of the relevant statutes of limitations in that chapter: "The limitations prescribed in this chapter apply to actions brought in the name of the state or county or for the benefit of the state or county, in the same manner as to actions by private parties . . . ." (§ 345.)

Accordingly, we next address whether one of the statutes of limitations that the Legislature has expressly made applicable to the state applies to the claim here.

### B. *Determination of the Applicable Statute of Limitations*

■ "To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action. [Citations.] '[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the

---

[10]Section 335 provides: "The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:"

The sections that follow section 335 then prescribe the limitations periods for various types of actions.

applicability of the statute of limitations under our code.' [Citation.]" (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 22-23 [32 Cal.Rptr.2d 244, 876 P.2d 1043], citing *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 214 [1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803], and *Maguire v. Hibernia S. & L. Soc.* (1944) 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062]; see also Note, *Developments in the Law—Statutes of Limitations* (1950) 63 Harv. L.Rev. 1177, 1192, 1195-1198.)

Put another way, "[w]hat is significant for statute of limitations purposes is the primary interest invaded by defendant's wrongful conduct. [Citation.]" (*Barton v. New United Motor Manufacturing, Inc.* (1996) 43 Cal.App.4th 1200, 1207 [51 Cal.Rptr.2d 328]; see *Day v. Greene* (1963) 59 Cal.2d 404, 410-411 [29 Cal.Rptr. 785, 380 P.2d 385, 94 A.L.R.2d 802] [although a complaint may be styled as a breach of contract action, if the gravamen of the claim is fraud, the three-year period prescribed in § 338 governs, rather than the period applicable to contracts]; 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 474, p. 599 ["If the 'gravamen' of the action is held to be tort, the action, though in form one for breach of contract, is subject to the tort limitation period"].)

Thus, for example, in *Leeper v. Beltrami, supra,* 53 Cal.2d 195, the California Supreme Court held that an action to set aside a deed and to quiet title to real property was barred by the three-year limitation period for fraud actions under section 338, rather than the five-year period under section 318[11] applicable to the recovery of real property, because the plaintiffs' recovery depended upon their right to avoid a contractual obligation, which, in turn, depended upon a finding of duress, a type of fraud. (*Leeper,* at pp. 213-214.) Based on its conclusion that "the modern tendency is to look beyond the relief sought, and to view the matter from the basic cause of action giving rise to the plaintiff's right to relief" (*id.* at p. 214), the state Supreme Court analyzed the case as follows: "Quieting title is the relief granted once a court determines that title belongs in plaintiff. In determining that question, where a contract exists between the parties, the court must first find something wrong with that contract. In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all. Plaintiff must show a right to rescind before he can be granted the right to quiet his title." (*Id.* at p. 216.) Accordingly, the court applied the three-year limitation period for fraud actions to the quiet title action.

---

[11]Section 318 provides in pertinent part: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff . . . was seized or possessed of the property in question, within five years before the commencement of the action."

■ Here, the gravamen of the District's first and second causes of action, seeking to declare the 1985 contracts void, is its claim that these agreements are unlawful under Government Code section 1090, and therefore void under Government Code section 1092. Indeed, the operative complaint styles both the first and second causes of action "[f]or a Declaration Against All Defendants that the 1985 Contracts Were Made in Violation of Government Code § 1090." While the form of the pleading is not determinative of the issue (*Quintilliani v. Mannerino* (1998) 62 Cal.App.4th 54, 65-66 [72 Cal.Rptr.2d 359]), none of the allegations in either cause of action hint at another basis for the District's claim for relief. And the other causes of action subject to defendants' summary adjudication motion—imposition of a constructive trust over the transferred assets, an accounting of the transferred assets, and an injunction to return the transferred assets—are fairly described as ancillary to the first two.

Thus, the nature of the right sued on here is the public's right to be free of a government contract made under the influence of a financial conflict of interest. Accordingly, the applicable statute of limitations is the statute applicable to a claim under Government Code sections 1090 and 1092, not a claim for the recovery of real property—although that is the ultimate relief the declaration seeks.

### C. *Claims Under Government Code Section 1092 Are Subject to the Limitations Periods Under Chapter 3*

Neither Government Code sections 1090 and 1092, nor the statutory scheme of which they are a part, specifies a limitations period for actions brought to void a contract entered in violation of Government Code section 1092.

Accordingly, the limitations periods under title 2 of part 2 apply (commencing with § 312) because section 312 provides that "[c]ivil actions, *without exception*, can only be commenced within the periods prescribed in this title . . . unless where, in special cases, a different limitation is prescribed by statute." (Italics added.)

And since the nature of the right sued on here is the public's right to be free of a government contract made under the influence of a financial conflict of interest, this is an action "other than for the recovery of real property," and is thus covered by chapter 3 of title 2 of part 2 (commencing with § 335). And "[t]he limitations prescribed in [that] chapter apply to actions brought in the name of the State . . . or for the benefit of the State . . . ." (§ 345.)

However, no case has squarely addressed the applicable statute of limitations for suits to void a contract in violation of Government Code section 1092, although various decisions have applied statutes of limitations to cases raising a financial conflict of interest under Government Code section 1090 or its predecessor statute. (See, e.g., *People v. Honig* (1996) 48 Cal.App.4th 289, 304, fn. 1 [55 Cal.Rptr.2d 555] [applying the three-year limitations period to penal actions under Gov. Code, § 1097 for violations of Gov. Code, § 1090]; *County of Marin v. Messner* (1941) 44 Cal.App.2d 577, 591 [112 P.2d 731] [action to recover money paid without authority under predecessor statute to Gov. Code, § 1090 is subject to three-year limitations period for liability created by statute]; *Schaefer v. Berinstein* (1956) 140 Cal.App.2d 278, 294, 297 [295 P.2d 113] [when gravamen of taxpayer's action is fraud against the city based, in part, on violation of Gov. Code, § 1090, three-year statute applies].)

Accordingly, as we noted, to determine the applicable statute of limitations, we must look to the " 'nature of the right sued upon and not . . . the relief demanded.' " (*Hensler v. City of Glendale, supra,* 8 Cal.4th at p. 23.) Government Code section 1090 prohibits state, county, district, and city officers or employees from being "financially interested in any contract made by them in their official capacity, or by any body or board of which they are members." And under Government Code section 1092, "[e]very contract made in violation of any of the provisions of Section 1090 may be avoided at the instance of any party except the officer interested therein." █ "California courts have generally held that a contract in which a public officer is interested is *void,* not merely voidable." (*Thomson v. Call, supra,* 38 Cal.3d at p. 646, fn. 15.) Moreover, a governmental agency "is entitled to recover any consideration which it has paid, without restoring the benefits received under the contract." (*Id.* at p. 647.) The California Supreme Court has ruled that this remedy results "in a substantial forfeiture" and provides "public officials with a strong incentive to avoid conflict-of-interest situations scrupulously." (*Id.* at p. 650.)

In this light, the one-year limitations period under section 340, subdivision (1), could be argued to apply to the District's claims to declare the 1985 contracts void and to repossess the transferred assets because it applies to "[a]n action upon a statute for a penalty or forfeiture, when the action is given to an individual, or to an individual and the state, except when the statute imposing it prescribes a different limitation." █ A forfeiture is "[t]he divestiture of property without compensation" or "[t]he loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty." (Black's Law Dict. (7th ed. 1999) p. 661, col. 1.) Government Code section 1092, which voids contracts in which a state employee has a financial conflict of interest without regard to the restoration of benefits, certainly would appear to effect a forfeiture.

■ However, we need not decide whether section 340, subdivision (1), applies in this case. Even if an action under Government Code section 1092 is not deemed a claim based on a statute for a forfeiture, the District's causes of action—brought 12 years after it entered the purportedly void agreements—would be time-barred under the four-year limitations period under the catchall provision of section 343. Section 343, which is also part of chapter 3 (which applies to all actions brought by the state [§ 345]), provides: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued."

■ As the California Supreme Court long ago explained, " '[t]he legislature has . . . specified the limitations applicable to a wide variety of actions, and then to rebut the possible inference that actions not therein specifically described are to be regarded as exempt from limitations, it has specified a four-year limitation upon "an action for relief not hereinbefore provided for" (§ 343); and where it has intended that an action shall be exempt from limitations it has said so in clear and unmistakable language. [Citations.]' " (*Moss v. Moss* (1942) 20 Cal.2d 640, 645 [128 P.2d 526, 141 A.L.R. 1422], quoting *Bogart v. George K. Porter Co.* (1924) 193 Cal. 197, 201 [223 P. 959, 31 A.L.R. 1045].)

■ Applying section 343 to this action to void the 1985 contracts on the ground of illegality would certainly be consistent with existing case authority. (E.g., *Moss v. Moss, supra,* 20 Cal.2d at pp. 644-645 [holding that cause of action for cancellation of an agreement is governed by § 343, in part because there is "no section of the code that expressly limits the time within which an action must be brought for cancellation of an instrument because of its illegality"]; *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 725 [161 P.2d 677] ["[o]rdinarily a suit to set aside and cancel a void instrument is governed by section 343 of the Code of Civil Procedure" unless, for example "the gravamen of the cause of action stated involves fraud or a mistake"]; see also *Piller v. Southern Pac. R.R. Co.* (1877) 52 Cal. 42, 44 ["the four years' limitation of [section] 343 applies to all suits in equity not strictly of concurrent cognizance in law and equity"]; *Dunn v. County of Los Angeles* (1957) 155 Cal.App.2d 789, 805 [318 P.2d 795] [action to set aside deed on the ground of coercion is governed by § 343].)

■ In any event, we reject the District's contention that the gravamen of its causes of action is possession of real property or ejectment. First, possession of real property is the ultimate relief sought (following a declaration to that effect), not the nature of the right sued upon, which controls the selection of the statute of limitations. (See *Leeper v. Beltrami, supra,* 53

Cal.2d at pp. 213-214.)[12] Instead, the District's right to recover the hospital facility from defendants depends wholly upon its establishing that Buhrmann and Cook were "financially interested" in the 1985 contracts so as to render those agreements void under Government Code section 1092. Second, only one of the two 1985 contracts that the District seeks to void pertains to real property. The agreement for transfer of assets cannot be founded on a claim to recover real property; therefore, this portion of the claim must surely be premised on chapter 3 of title 2 of part 2 of the Code of Civil Procedure addressing actions other than for the recovery of real property.

Nor does the fact that the contracts are claimed void avoid the statute of limitations. Actions to void contracts are nonetheless subject to the statute of limitations. (E.g., *Smith v. Bach* (1921) 53 Cal.App. 63 [199 P. 1106]; 3 Witkin, Cal. Procedure, *supra,* Actions § 507, p. 640.)

 Finally, even if the gravamen of the District's causes of action was deemed to be for the recovery of real property under chapter 2 of title 2 (commencing with § 315), the District's 12-year delayed action would be barred because it would be subject to the 10-year limitations period under section 315 for actions by the people of this state "in respect to any real property" by reason of "the right or title of the people to the same."

### D. *Accrual of the District's Causes of Action*

 As a general rule, a statute of limitations accrues when the act occurs which gives rise to the claim (*Myers v. Eastwood Care Center, Inc.* (1982) 31 Cal.3d 628, 634 [183 Cal.Rptr. 386, 645 P.2d 1218]), that is, when "the plaintiff sustains actual and appreciable harm. [Citation.] Any 'manifest and palpable' injury will commence the statutory period. [Citation.]" (*Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000 [55 Cal.Rptr.2d 220].)

 Assuming for the sake of argument that the 1985 agreements were made in violation of Government Code section 1090, the District sustained a "manifest and palpable" injury no later than November 1985. That is when it entered a contract influenced by a financial conflict of interest—the harm the statute seeks to avoid.

 After all, "Government Code section 1090 codified the common law prohibition of public officials having a financial interest in contracts

---

[12]A contrary result was suggested in *People v. Kings Co. Development Co., supra,* 177 Cal. at page 535, where the court found that an action by the state to cancel a land patent, issued by officers acting under the influence of fraud, was an action in respect to land and was governed by section 315 for actions to recover real property. But that case preceded *Leeper v. Beltrami, supra,* 53 Cal.2d 195, and *Hensler v. City of Glendale, supra,* 8 Cal.4th at pages 22-23, which so clearly held that the nature of the right sued upon controlled the determination of the applicable statute of limitations.

they make in their official capacities." (*BreakZone Billiards v. City of Torrance* (2000) 81 Cal.App.4th 1205, 1230 [97 Cal.Rptr.2d 467].) Because "it is recognized ' "that an impairment of impartial judgment can occur in even the most well-meaning men when their personal economic interests are affected by the business they transact on behalf of the Government" ' [citations]," the objective of the conflict of interest statutes " 'is to remove or limit the *possibility* of any personal influence, either directly or indirectly which might bear on an official's decision . . . .' [Citations.]" (*People v. Honig, supra,* 48 Cal.App.4th at p. 314.) Accordingly, Government Code section 1090 has been interpreted to prohibit a financially interested employee from participating in the "planning, preliminary discussion, compromises, drawing of plans and specifications and solicitation of bids that [lead] up to the formal making of the contract." (*People v. Honig, supra,* 48 Cal.App.4th at pp. 314-315, citing *Stigall v. City of Taft* (1962) 58 Cal.2d 565, 571 [25 Cal.Rptr. 441, 375 P.2d 289]; see also *Thomson v. Call, supra,* 38 Cal.3d at pp. 647-648.)

▮ Based on the limited record before us, it is undisputed that Buhrmann and Cook worked simultaneously for the District and Marin General before the 1985 contracts were executed in November 1985. Hence, the harm that Government Code section 1090 seeks to avoid arose no later than November 1985 when the contracts were executed. Accordingly, the District's causes of action to declare the 1985 contracts void under Government Code section 1092 accrued no later than November 1985. And the District makes no allegation that the commencement of the running of the statute of limitations should be tolled, only that its action is exempt from the otherwise applicable statute of limitations. Thus, unless the *Hoadley* doctrine exempts this action from the statute of limitations, defendants have successfully established that this action, filed in 1997—12 years later—is untimely under either section 315, section 340, subdivision (1), or section 343.

### III. *The District Has Not Established That Its Action Is Exempt from the Statute of Limitations*

▮ The District's opposition to defendants' motion for summary adjudication rests wholly upon its insistence that "under the rule confirmed in [*Hoadley*] a conveyance of public-use property that was not valid and effective when it was made can be attacked, and the property reclaimed by the public, regardless of how much time has passed."

As we shall explain, *Hoadley* does not stand for such a broad proposition. No published case has applied the holding of *Hoadley,* or its reasoning, to an action to set aside contracts allegedly made in violation of Government Code section 1090.

In *Hoadley*, the plaintiff sued the City of San Francisco to quiet title to two parcels of land, located in an area dedicated for use as city squares. He claimed that he had acquired title (1) by virtue of an ordinance and a confirmatory act, and (2) by adverse possession. (*Hoadley, supra*, 50 Cal. at pp. 271-272.)

After holding that the plaintiff did not acquire title to the public squares pursuant to the ordinance or the confirmatory act (*Hoadley, supra*, 50 Cal. at p. 273), the court in *Hoadley* considered whether the city was barred by the applicable statute of limitations from opposing the plaintiff's claim of adverse possession. First, the court ruled that adverse possession could not extinguish a public use to which the land had been dedicated: "The Statute of Limitations was not intended as a bar to the assertion by the public of rights of that character." (*Id.* at p. 275.) Next, it ruled that the city's legal title could not be extinguished by adverse possession: "That is to say, the title was granted to the city in trust, for public use; and the city had no authority . . . to alienate or in any manner dispose of it, but only to hold it for the purposes expressed in the statute. It was granted to the city for public use, and is held for that purpose only. It cannot be conveyed to private persons, and is effectually withdrawn from commerce; and the city having no authority to convey the title, private persons are virtually precluded from acquiring it. The land itself, and not the use only, was dedicated to the public. Land held for that purpose, whether held by the State or a municipality, in our opinion, is not subject to the operation of the Statute of Limitations." (*Id.* at pp. 275-276.)

Thus, *Hoadley*'s holding was premised on the governmental entity's lack of "authority . . . to alienate" property held for public use (*Hoadley, supra*, 50 Cal. at p. 275) and the presumably concomitant inability of a private person to acquire it indirectly through the failure of the government to timely bring suit within the statute of limitations—quite unlike the instant case where the District had statutory authority to enter into a lease.

This is made more clear by *Hoadley*'s reliance on the reasoning in *Commonwealth v. Alberger* (1836) 1 Whart. 469 (*Commonwealth*), among other cases, in coming to its conclusion. (*Hoadley, supra,* 50 Cal. at p. 275.) In *Commonwealth*, the Supreme Court of Pennsylvania held that William Penn's son had no authority to sell a portion of a public square in Philadelphia dedicated to public use by his father. In holding that the defendants were not "protected by the lapse of time" (*Commonwealth,* at p. 486), the Supreme Court of Pennsylvania opined: "It is well settled that lapse of time furnishes no defense for an encroachment on a public right; such as the erecting of an obstruction on a street or public square. . . . [¶] These

principles are of universal application, and control the present case as well as others. There is no room for presumption since the grant itself is shown and proves defective; and if there were no grant shown, presumption will not be made to support a nuisance, by encroachment on a public right; and no statute of limitations bars the proceeding by indictment to abate it. These principles, indeed, pervade the laws of the most enlightened nations as well as our own code, and are essential to the protection of public rights, which would be gradually frittered away, if the want of complaint or prosecution gave the party a right. Individuals may reasonably be held to a limited period to enforce their right against adverse occupants, because they have interest sufficient to make them vigilant. But in public rights of property, each individual feels but a slight interest, and rather tolerates even a manifest encroachment, than seeks a dispute to set it right . . . [citation]." (*Id.* at pp. 486, 488.)

Accordingly, based on this analysis, it is clear that *Hoadley* held that public-use property that cannot be alienated directly should not be alienated indirectly to an adverse possessor through the passage of time.

Indeed, *Hoadley*'s holding that the statute of limitations does not bar the state's recovery of public-use property against a claim of adverse possession is simply the mirror image of the rule that a private party cannot acquire prescriptive title to public-use property through adverse possession: "[S]o far as the title to real property is concerned,—prescription and limitation are convertible terms; and a plea of the proper statute of limitations is a good plea of a prescriptive right." (*Water Co. v. Richardson* (1887) 72 Cal. 598, 601 [14 P. 379]; see *People v. Shirokow, supra,* 26 Cal.3d at p. 311.) Thus, *Hoadley*'s holding that property held by the state in trust cannot be lost through adverse possession is not so much a rule concerning the application of the statute of limitations as it is a substantive doctrine that a private party cannot acquire prescriptive title to public rights founded on adverse possession. Indeed, Civil Code section 1007 was amended in 1935 to codify this by prohibiting the acquisition of title by adverse possession of any public-use property, no matter how long the property is occupied. (Stats. 1935, ch. 519, § 1, p. 1592.)[13] Hence, a statute now defines in more direct terms the common law exception that *Hoadley* established.

We thus face the question whether *Hoadley* should be *extended* beyond its codification to exempt any conveyance of public-use property from the

---

[13]Civil Code section 1007, following a further amendment in 1968, presently provides: "Occupancy for the period prescribed by the Code of Civil Procedure as sufficient to bar any action for the recovery of the property confers a title thereto, denominated a title by prescription, which is sufficient against all, *but no possession by any person, firm or corporation no matter how long continued* of any land, water, water right, easement, or other property whatsoever dedicated to a public use by a public utility, or dedicated to or owned by the state or any public entity, shall ever ripen into any title, interest or right against the owner

statute of limitations, in the face of other statutory enactments that expressly apply limitations to actions brought by the state.

## A. *The Adverse Possession Cases*

*Hoadley* has most commonly been cited as authority to bar an adverse possessor of public-use property from asserting the statute of limitations against the government's action to recover the property. (E.g., *Board of Education v. Martin, supra,* 92 Cal. 209 [the California Supreme Court relied upon *Hoadley* to hold that no statute of limitations bars an educational district from recovering lands taken by adverse possession]; *People v. Kerber* (1908) 152 Cal. 731, 733 [93 P. 878] [the statute of limitations does not apply to an action by the state to recover a portion of San Diego Bay tidelands purportedly acquired by adverse possession because tidelands "belong to the state by virtue of its sovereignty" and "constitute property devoted to public use, of which private persons cannot obtain title by prescription, founded upon adverse occupancy for the period prescribed by the statute of limitations"]; *County of Yolo v. Barney* (1889) 79 Cal. 375, 378-381 [21 P. 833] [no statute of limitations restricted ability of hospital district to quiet title to property claimed by adverse possession]; *San Leandro v. Le Breton* (1887) 72 Cal. 170, 177 [13 P. 405] [no statute of limitations bars city from recovering land marked for public use against a claim of adverse possession], disapproved on another ground in *People v. Reed* (1889) 81 Cal. 70, 79 [22 P. 474]; *Visalia v. Jacobs* (1884) 65 Cal. 434, 435-436 [4 P. 433] [no statute of limitations bars city from recovering a portion of a city street taken by adverse possession]; *Proctor v. City & County of San Francisco* (9th Cir. 1900) 100 Fed. 348, 350-351 ["It is . . . settled by a series of decisions by the supreme court that the rights of municipal corporations in such property are not affected by adverse possession, however long continued"]; see 3 Witkin, Cal. Procedure, *supra,* Actions, § 456, p. 578 ["There can be no adverse possession of property devoted to a public use"].)

More recently, in *People v. Shirokow, supra,* 26 Cal.3d 301, the California Supreme Court characterized *Hoadley* in conformity with these cases as holding that property held in public trust cannot be lost through adverse possession: "More than a century ago, in *Hoadley*[, *supra*,] 50 Cal. [at pages] 274-276, we articulated the rule that property held by the state in trust for the people cannot be lost through adverse possession. The statute of limitations is of no effect in an action by the state to recover such property from an adverse possessor whose use of the property for private purposes is not

thereof." (Civ. Code, § 1007, italics added, as further amended by Stats. 1968, ch. 1112, § 1, pp. 2125-2126.)

consistent with the public use. [Citation.]" *(People v. Shirokow, supra,* 26 Cal.3d at p. 311.)

Accordingly, *Hoadley* has no application to the circumstances presented here for several reasons.

First, the instant case does not involve the application of the statute of limitations to a claim of adverse possession of public property.

Second, *Hoadley*'s premise is that the passage of time cannot grant title to that which the government has no authority to alienate. Here, the District had authority to enter into a lease of the hospital. The issue in this case is not whether the public property could be leased, but whether it was leased in conformity with the law. For this reason, too, *Hoadley* does not apply.

Indeed, the California Supreme Court in *Ames v. City of San Diego* (1894) 101 Cal. 390 [35 P. 1005], distinguished *Hoadley* on precisely this ground: "[I]n case of lands, the legal title to which is vested in the city, and which may be alienated by it, the rule just stated [in *Hoadley*] in relation to land dedicated to the public use does not apply." *(Id.* at p. 394.)

Finally, *Hoadley* surely does not apply to that part of the District's claim that concerns property that could never be the subject of adverse possession, namely, the assets (including the cash, inventory, and accounts receivable) which were transferred under the 1985 contracts.

B. *The Unauthorized Transfer Cases*

The District observes, however, that "the Supreme Court . . . disposed of any notion that the *Hoadley* no-limitations rule was restricted to situations where public-use property had merely been seized and held by a private individual on a claim of adverse possession," since it has also been cited to defeat the application of the statute of limitations in actions for the recovery of public-use property that has been voluntarily transferred.

But a careful reading of the cases upon which the District relies demonstrates that they do not support its assertion that the *"Hoadley* rule" bars the application of the statute of limitations to *any* invalid, illegal, or "ineffective" transfer of a public-use asset, *"regardless* of the particular legal defect that rendered the original transfer invalid." Instead, these cases only extend *Hoadley* to bar the assertion of the statute of limitations with respect to the recovery of public-use property that the government had no authority to alienate.

In *Sixth District etc. Assoc. v. Wright, supra,* 154 Cal. 119 (*Sixth District*), for instance, the California Supreme Court cited *People v. Kerber, supra,* 152 Cal. 731 (an adverse possession case, which in turn relied upon *Hoadley*) to reject a statute of limitations defense to an action to recover a gift made in violation of the state Constitution's ban on gifts of public property. (*Sixth District, supra,* at p. 130.) In *Sixth District,* the governing board of an agricultural district conveyed to a private corporation all of the district's property in purported accordance with a statute expressly authorizing such transactions. (*Id.* at pp. 122-126.) However, the California Supreme Court held that the act purporting to authorize the transaction conflicted with a provision of the state Constitution barring gifts of public property (*id.* at pp. 128-129) and rejected the defendants' assertion of the statute of limitations: "[T]he property was held in trust by a state institution or public agency for a public use, which public use has not been discontinued or abandoned *by any lawful act of public authority.* As to such property it is well settled that the statute of limitations has no application." (*Id.* at p. 130, italics added.)

Thus, *Sixth District,* like *Hoadley,* was premised on public property held in trust that the government had no authority to alienate; thus, no limitation period could operate to alienate indirectly what could not be alienated directly.

The District also relies on *Chambers, supra,* 37 Cal.2d 552, for the proposition that no limitations period can bar a suit to retrieve public-trust property invalidly conveyed to a private party. But in *Chambers,* the state sought to quiet title on park land, which was mistakenly conveyed by a tax deed to a private party, Chambers. (*Id.* at p. 555.) Opposing the state's argument that the tax deed was void, Chambers defended on the basis of various statutes of limitations (*id.* at pp. 555-556), which the court rejected. First, the court found that the action was commenced *within* the 10-year period of section 315 for actions by the people of the state " 'in respect to any real property.' " (*Id.* at p. 556, quoting § 315.) And citing *Hoadley,* it noted that in any event, "neither section 315 of the Code of Civil Procedure nor the provisions on adverse possession . . . apply to property owned by the state and devoted to a public use." (*Chambers,* at pp. 556-557.) Next, the court rejected Chambers's assertion that the action was barred by the one-year limitations periods contained in the Revenue and Taxation Code, observing the general rule that "statutes of limitation do not apply against the state unless expressly made applicable" and ruling that "tax statutes do not apply against the state as to its property." (*Chambers, supra,* at p. 559.) It further reasoned that "it seems that if the statutes on adverse possession do not run against the property of the state which is dedicated to a public purpose (see authorities cited [including *Hoadley*]) the opposite result should not be reached, depriving the state of its property, by application to it of the

provisions . . . of the Revenue and Taxation Code. We hold therefore that they do not apply to the state." (*Id.* at p. 560, bracketed text added.)

*Chambers, supra,* 37 Cal.2d 552, does not assist the District. First and foremost, relying on the rule that statutes of limitations do not apply against the state unless made expressly applicable, *Chambers* merely construed the limitations periods in the tax statutes not to "apply against the state as to its property." (*Id.* at p. 559.) Second, although it suggested in dictum that section 315 does not apply to public-use property owned by the state, we do not rely on section 315 for the applicable limitations period in this case; thus, we have no need to rely on a construction of that section. Moreover, the cases that the Supreme Court cited for its dictum that section 315 does not apply to public-use property owned by the state (many of which we have cited here) do not so broadly hold. Third, regardless of the characterization of *Hoadley* in *Chambers,* the California Supreme Court's more recent characterization of *Hoadley* in *People v. Shirokow, supra,* 26 Cal.3d at page 311, more narrowly defines the doctrine to hold that the rule is "that property held by the state in trust for the people cannot be lost through adverse possession." The Supreme Court's holding in *Hoadley* and its most recent characterization of *Hoadley* would appear to be the most reliable expositions of the decision's scope. Fourth and finally, *Chambers* acknowledged that the limitations periods under *chapter 3* of title 2 of part 2 (which we have found applies here) are, in fact, applicable to actions brought by the state. (*Chambers, supra,* 37 Cal.2d at p. 559.)

The remainder of the cases relied upon by the District simply hold that the passage of time does not prevent the state from recovering public-use property that the state has no right to alienate. (*People v. California Fish Co.* (1913) 166 Cal. 576, 598-600, 611-612 [138 P. 79] [the state did not have the legal power to transfer certain coastal tidelands because, in part, "[a] patent for state land, issued by the officers in a case where there has been no valid application or survey approved nor any valid payment of the price, is, of course, void as against the state"]; *California Trout, Inc. v. State Water Resources Control Bd.* (1989) 207 Cal.App.3d 585, 631 [255 Cal.Rptr. 184] [licenses to validate diversion of water exceeded amount permitted under state law and thus action seeking rescission of licenses was not untimely because "[a]n encroachment on the public trust interest shielded by [statute] cannot ripen into a contrary right due to lapse of any statute of limitations"]; *Allen v. Hussey* (1950) 101 Cal.App.2d 457, 467-468, 473-475 [225 P.2d 674] [lucrative long-term lease of airport facilities, for which irrigation district received $1 annual fee, was unauthorized breach of public trust and an unconstitutional gift of public funds].)

In contrast, the District here makes no allegation that it had "no authority" to effect a lease and transfer hospital assets on the terms provided. To the

contrary, the provisions of the Local Health Care District Law then in effect expressly authorized such a lease and the other transfers involved. Nor does the District contend that the then-statutory framework permitting the transactions was unconstitutional or otherwise unlawful. The prohibition on conflicts of interest contained in Government Code section 1090 in no way prohibits the transfers authorized by the Local Health Care District Law (Health & Saf. Code, § 32000 et seq.), but instead directs individual government employees not to "hav[e] a financial interest in contracts they make in their official capacities." (*BreakZone Billiards v. City of Torrance, supra,* 81 Cal.App.4th at p. 1230.)

Accordingly, Government Code section 1090 does not deprive the government of authority to contract over, and thus the District had authority to lease, the public-use property. In contrast, all of the aforementioned cases that bar application of the statute of limitations are based on the premise that the passage of time cannot be permitted to indirectly alienate public-use property that the government is not authorized to alienate directly. Here, the District is entitled to lease the property, and just as importantly, the passage of time will not cause the District to lose the property. To the contrary, the lease will ultimately expire by its own terms, and the District will regain possession of the property. We thus decline to expand the holding of *Hoadley* to apply to a lease of public-use property and to the transfer of assets that the law authorizes the District to make.

## IV. *Conclusion*

An action to void a contract under Government Code section 1092 comes within the limitations periods specified in chapter 3 of title 2 of part 2 of the Code of Civil Procedure. (§ 335 et seq.) And the Legislature has expressly applied all of the limitations periods in that chapter to actions brought in the name of the state. (§ 345.)

The public policy underlying *Hoadley, supra,* 50 Cal. 265—that "property held by the state in trust for the people cannot be lost through adverse possession" (*People v. Shirokow, supra,* 26 Cal.3d at p. 311)—is not furthered by extending it to allow an untimely suit to void a lease of public-use property, which will expire by its own terms and which the state is otherwise authorized to enter. Instead, *Hoadley* is meant to prevent public-use property that the state cannot directly alienate from being indirectly alienated by the passage of time. That is not the case with property that the state is authorized to lease and which the state will recover at the end of the lease term.

Moreover, even if the public policy under *Hoadley* was furthered by allowing an untimely suit to void a lease of public-use property, it is for the

Legislature to weigh the competing public policies and so determine. Thus far, the Legislature has not created any exceptions to its subjection of the state to the limitation periods in chapter 3, and it has expressly codified *Hoadley* with respect to adverse possession claims.

Accordingly, we conclude that this action is time-barred. Defendants' uninterrupted operation of the hospital facility for nearly half of its 30-year lease before suit was brought certainly gave rise to a legitimate expectation that the 1985 contracts would not be challenged and that defendants could rely on those contracts in making investment decisions. Such expectations are precisely what the Legislature chose to protect when it expressly subjected the state to the same limitation periods that bind private parties' contract, tort, and statutory claims.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 26(a).)

Blease, Acting P. J., and Raye, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 25, 2003.