[No. D052903. Fourth Dist., Div. One. June 24, 2009.]

COSTA SERENA OWNERS COALITION, Plaintiff and Respondent, v. COSTA SERENA ARCHITECTURAL COMMITTEE, Defendant and Appellant.

[No. D053159. Fourth Dist., Div. One. June 24, 2009.]

COSTA SERENA OWNERS COALITION, Plaintiff and Respondent, v. COSTA SERENA ARCHITECTURAL COMMITTEE, Defendant and Respondent;
JESS DIAZ, Movant and Appellant.

[No. D053553. Fourth Dist., Div. One. June 24, 2009.]

COSTA SERENA OWNERS COALITION, Plaintiff and Appellant, v. COSTA SERENA ARCHITECTURAL COMMITTEE, Defendant and Respondent.

1176

**COUNSEL**

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Matthew B. Stucky, Esther P. Holm and Lisa Ricksecker for Defendant and Appellant and for Defendant and Respondent.

Shifflet, Kane & Konoske and Gregory C. Kane for Plaintiff and Respondent and for Plaintiff and Appellant.

K. Martin White for Movant and Appellant.

**OPINION**

**AARON, J.—**

## I.

## INTRODUCTION

Costa Serena is a planned development located in Oceanside, California, that was built in the 1970's. A "Declaration of Restrictions" that governed the community was set to expire at the end of 2006. During that year, a group of homeowners led by the Costa Serena Architectural Committee (the Architectural Committee)—a committee comprising of homeowners who had been elected to enforce the Declaration of Restrictions—attempted to extend the life of the Declaration of Restrictions beyond 2006. Other homeowners in the community opposed extending the Declaration of Restrictions. The group that opposed extending the Declaration of Restrictions was particularly opposed to a provision in the Declaration of Restrictions that required that residents be at least 55 years old. Some of these homeowners formed a group—the Costa Serena Owners Coalition (the Coalition)—and filed an action challenging the actions of the Architectural Committee. The Coalition attacked the Architectural Committee's attempt to extend the Declaration of Restrictions by, among other things, challenging the validity of amendments to the Declarations of Restrictions that had been recorded in 1986, 1987 and 1999, including a unification amendment that was intended to ensure that the entire Costa Serena community would be governed by a single Declarations of Restrictions and a single Architectural Committee.[1]

---

[1] The Costa Serena development was built in seven phases. Each phase was called a "Unit." As each Unit was completed, a Declaration of Restrictions for that Unit was recorded, so that upon completion of the entire community, seven Declarations of Restrictions existed and seven

Both the Architectural Committee and the Coalition filed motions for summary judgment. The trial court granted summary judgment in favor of the Coalition, concluding that the Architectural Committee could not establish that the extension of the UDoR had been accomplished in the manner required by the provisions of the UDoR. The trial court's ruling was premised on its conclusion that the 1986, 1987 and 1999 amendments to, variously, the DoR's and the UDoR were void *ab initio* because they were enacted in a manner that did not comply with the provision in the DoR's and subsequent UDoR pertaining to amendments. The court entered judgment in favor of the Coalition.

After judgment was entered, homeowner Jess Diaz filed a motion to vacate the judgment. The trial court denied the motion on the ground that the court did not have jurisdiction to consider the motion because the Architectural Committee had filed a notice of appeal before the court was able to rule on Diaz's motion. In addition, the Coalition filed a motion for attorney fees, arguing that the DoR's provided that the prevailing party in litigation concerning the DoR's was entitled to attorney fees. The trial court denied the Coalition's motion for attorney fees.

This matter involves three consolidated appeals, one filed by the Architectural Committee, one filed by Diaz, and one filed by the Coalition. First, the Architectural Committee appeals from the trial court's order granting summary judgment in favor of the Coalition. The Architectural Committee contends that the judgment must be reversed because (1) the Coalition's claims are barred by the statute of limitations; (2) the Coalition's claims are barred by the doctrine of laches; and (3) the trial court erred in interpreting the amendment provisions of the DoR's/UDoR to require that the Architectural Committee(s) have recorded a document signed by 75 percent of record owners of the Units, in order to properly amend the DoR's/UDoR. The Architectural Committee further appeals from the trial court's order excluding a number of exhibits that the Architectural Committee filed in support of its motion for summary judgment.

separate architectural committees were established to enforce the Declaration of Restrictions for each Unit. The Declarations of Restrictions for the Units were essentially identical, and differed only with respect to the properties identified as being subject to the restrictions.

In an attempt to make clear which document and/or documents are being referenced, we will identify the single Declaration of Restrictions that purports to govern the entire Costa Serena community as a whole at the time this lawsuit was filed as the "Unified Declaration of Restrictions" (UDoR). We will refer to the individual Declarations of Restrictions that originally governed the seven separate Costa Serena Units as the Declarations of Restrictions (DoR's), together, or individually as a Declaration of Restrictions (DoR).

Diaz appeals from the postjudgment order of the trial court denying his motion to vacate the judgment. Diaz contends that the trial court retained jurisdiction to consider his motion, and that the court should have vacated the judgment on essentially the same grounds that the Architectural Committee raises on appeal.

The Coalition appeals from the postjudgment order of the trial court pertaining to attorney fees. The Coalition contends that the trial court erred in failing to award it attorney fees pursuant to the language of the DoR's.

We conclude that the trial court erred in ruling that the amendments to the DoR's/UDoR were void *ab initio* and that they therefore could be collaterally attacked at any time. We further conclude that the Coalition's claims with regard to those amendments are barred by the statute of limitations. Thus, we need not consider whether the amendments that were recorded in 1986, 1987 and 1999 were properly adopted under the terms of the DoR's/UDoR.

We also conclude that the trial court erred in ruling that the Architectural Committee did not comply with the provisions of the UDoR in extending the UDoR in 2006. In reaching this conclusion, we determine that the trial court erroneously sustained objections to a number of the homeowner consent forms that the Architectural Committee submitted in support of its motion for summary judgment. The trial court apparently concluded that some of the consent forms were inadmissible because the property owners' names and the property descriptions on the forms were not identical to the names and property descriptions that appear on the deeds to the properties. We conclude that the consent forms are sufficient to demonstrate that a majority of property owners agreed to extend the UDoR, and that the trial court improperly sustained the Coalition's objections to the consent forms. We therefore reverse the judgment, and direct the trial court to enter judgment in favor of the Architectural Committee.

By reversing the judgment, we render moot Diaz's appeal from the trial court's refusal to consider his motion to vacate the judgment, since, having reversed the judgment, this court can no longer grant Diaz the relief he seeks. Similarly, our reversal of the judgment renders moot the Coalition's appeal pertaining to attorney fees, since the Coalition is not the prevailing party in the litigation.

## II.

### FACTUAL AND PROCEDURAL BACKGROUND

Rosedale Homes Development Corporation developed the Costa Serena community in the early 1970's. Upon completion of the seven Units, the entire community consisted of 724 homes.

Each of the seven DoR's governing the seven Units originally contained a restriction that provided that no person under the age of 45 could regularly occupy a residence in Costa Serena.

Each DoR also contained a provision that stated that the DoR would expire on December 31, 2006, and set forth the process by which the DoR could be extended beyond that date. That provision, located in paragraph 16 of each DoR, provided: "Each and all of the foregoing conditions and restrictions shall terminate on December 31, 2006, unless the owners of a majority of said lots have executed and recorded at any time within six (6) months prior to December 31, 2006, in the manner required for a conveyance of real property, a writing in which they agree that said Conditions and Restrictions shall continue for a further specified period and providing therein a similar provision for the further extension of said Conditions and Restrictions, or some of them, provided, also, that the above and foregoing Conditions and Restrictions may be modified, after said termination date at the times and in the manner hereinabove provided for the extension of said Conditions and Restrictions in force at the time of such extension or modification."

The procedure for amending a DoR was set forth in paragraph 28 of each DoR: "Subject to the provisions of paragraph[s] 16 and 27[2], the provisions of these restrictions, other than this paragraph, may be amended by an instrument in writing signed and acknowledged by record owners of at least seventy-five percent (75%) of the units located on the real property, which amendment shall be effective upon recordation in the Office of the Recorder of San Diego County, California."

In 1986, in response to a change in the law in California, the Architectural Committee for each of the seven Units recorded amendments to the DoR's increasing the minimum age of residents from 45 to 55. Each amendment was signed by one or more individuals. The signatures appeared below a paragraph in each document that reads as follows: "We, the undersigned[,] comprising all of the members of the Costa Serena Architectural Committee, the unincorporated Association named in the Declaration to enforce the provisions thereof, hereby certify and declare that the foregoing provisions related to use and occupancy of living units in Costa Serena Unit No. [respective Unit number], are the provisions applicable to and enforceable and enforced with respect to the above-described property."

---

[2] Paragraph 27 involves protecting mortgagers and title insurance companies from the consequences of homeowner breaches of a DoR.

In 1987, an amendment was recorded that, by its terms, applied to all seven DoR's (the 1987 Amendment). The amendment made three significant changes to the original DoR's. First, the 1987 Amendment combined all seven Units into a single community that would be subject to a single governing document, the UDoR. The 1987 Amendment identified the DoR that had been previously governing Unit 7 as the new UDoR. Second, the 1987 Amendment provided for the creation of a single Architectural Committee, which was to comprise five individuals who would be responsible for enforcing the UDoR.[3] Third, the 1987 Amendment altered the procedure for amending the UDoR, providing: "Any amendment to the Declaration of Restrictions as amended, may be signed and acknowledged by a majority of the elected members of the Architectural Committee, said members certifying that the contents contained therein have been approved by a vote of the Owners as required by the Declaration."

The 1987 Amendment was signed by three members of the Architectural Committee, and included a provision that stated: "[W]e the undersigned, comprising all of the members of the COSTA SERENA ARCHITECTURAL COMMITTEE hereby certify that pursuant to the requirements of said Declaration of Restrictions, owners of dwelling units located within Units 1 through 7 of COSTA SERENA, constituting at least seventy-five (75%) of the present Ownership of dwellings within each respective unit have declared and fixed the conditions and restrictions as contained in the Declaration of Restrictions recorded at File Page No. 73-186901, recorded July 6, 1973, as amended at File Page N[o]. 86-082339, recorded March 3, 1986, upon and subject to which each and all of the lots of all units shall be hereinafter held, used, occupied, leased, sold and/or conveyed."

The Architectural Committee thereafter recorded an amendment to the UDoR on April 22, 1999 (the 1999 Amendment), which further purported to alter the amendment procedure. The 1999 Amendment provides:

"ARTICLE 28

"AMENDMENT OF DECLARATION

"28.1 Subject to the provisions of paragraphs 16 and 27, this Declaration may be amended or revoked in any respect by the vote or assent by written ballot of more than 50% of all owners entitled to vote and casting ballots.

---

[3] The original DoR's for the seven Units provided for Architectural Committees consisting of three individuals.

With respect to any vote, the Association shall be entitled to accept the vote of an owner of record of a unit within Costa Serena. Each unit will be entitled to only one vote, regardless of how many titleholders appear of record.

"28.2 An amendment to the Declaration will be effective upon the recording in the Office of Recorder of San Diego County, a Certificate of Amendment duly executed and certified by the President and Secretary of the Association, and the Chairman of the Architectural Committee setting forth in full the amendment so approved and that the approval requirements of 28.1 above, have been duly met. Notwithstanding anything to the contrary contained herein, no such amendment shall [a]ffect the rights of the holder of any first deed of trust or mortgage recorded prior to the recording of such amendment.

"28.3 Any amendment made in accordance with the terms of this Declaration shall be presumed valid by anyone relying on them in good faith."

The 1999 Amendment was signed by the chairman and two members of the Architectural Committee, as well as the president and secretary of the Costa Serena Community Association.[4] The signatories "certifi[ed] and declare[d]" that the 1999 Amendment "was approved by a vote of the owners as required by the Declaration of Restrictions."

There is no evidence in the record that the validity of the 1986, 1987 or 1999 amendments was challenged at any time prior to the current litigation.

In 2006, the Architectural Committee attempted to extend the UDoR by utilizing the voting process provided for in paragraph 28.1 of the UDoR, as amended by the 1999 Amendment.

On July 14, 2006, in response to the Architectural Committee's efforts to extend the UDoR pursuant to the amendment process provided for in paragraph 28.1 of the UDoR, the Coalition filed a complaint seeking to enjoin the Architectural Committee from proceeding with the voting process. The Coalition contended that the DoR's for the separate Units had not been unified into a single DoR, and requested declaratory relief regarding the proper interpretation of the provisions in the DoR's that set forth the

---

[4] The record does not disclose the relationship between the Architectural Committee and the Costa Serena Community Association, or the various rights and duties of each entity.

procedure for amending and extending the DoR's. That day, the trial court issued a preliminary injunction enjoining the Architectural Committee from completing the voting process identified in paragraph 28.1 to extend the UDoR.

The Coalition filed an amended complaint (First Amended Complaint) on July 6, 2006, in which it alleged the same two causes of action that it alleged in its original complaint.

After the court enjoined the Architectural Committee from pursuing the voting process in an effort to extend the UDoR, the Architectural Committee took a different approach to extend the DoR beyond December 31, 2006. The Architectural Committee collected 375 signed and notarized forms captioned, "CONSENT[S] TO EXTENSION" from Costa Serena property owners.[5] On September 25, 2006, the Architectural Committee recorded a document entitled "Extension of Declaration of Restrictions" (Extension Document). The notarized consent documents were included in an exhibit to the Extension Document, as well as in a supplemental exhibit to the Extension Document that was recorded November 22, 2006.

On December 21, 2006, the Coalition filed a document entitled "SUPPLE-MENTAL COMPLAINT FOR DECLARATORY RELIEF AND CANCEL-LATION OF WRITTEN INSTRUMENT (CCP § 464)" (Supplemental Complaint). In the Supplemental Complaint, the Coalition alleged that the Extension Document was invalid, and requested a declaration of the parties' rights and duties with respect to the Extension Document and the DoR's/UDoR. In a second cause of action in the Supplemental Complaint, the Coalition sought cancellation of the prior amendments to the DoR's/UDoR and cancellation of the Extension Document, on the same grounds that it alleged in support of its request for declaratory relief.

The Coalition moved for summary judgment or, in the alternative, sum-mary adjudication of a number of issues. Shortly after the Coalition filed its motion, the Architectural Committee also moved for summary judgment and/or summary adjudication.

---

[5] There were a total of 696 Costa Serena residences in 2006. Although Costa Serena had 724 residences at the time it was completed in the 1970's, only 696 Costa Serena residences existed in 2006 because, during the 1990's, the City of Oceanside took title to and vacated 28 of the original 92 lots in Unit 7 in order to build a road. On appeal, the parties dispute the effect of the City of Oceanside's ownership of land that formerly represented 28 Costa Serena lots for purposes of determining how many owners would constitute a "majority."

On November 29, 2007, the trial court issued a tentative ruling in which the court addressed both parties' motions. The trial court ruled in the Coalition's favor on a number of issues, and granted summary adjudication in favor of the Coalition on three of its four causes of action. The court concluded that the original DoR's required that the property owners' signatures be attached to any amendment document and that these signatures also be recorded with the amendment. The court concluded that the 1986, 1987 and 1999 Amendments (jointly, Amendments) were void *ab initio*, rejecting the Architectural Committee's arguments that the Coalition's challenges to these Amendments were barred by the statute of limitations and laches. The court also determined that portions of the 1987 Amendment and the 1999 Amendment were void because they attempted to amend the amendment provision itself, which, by its terms, was not subject to amendment.

Based on its determination that the 1987 Amendment was void, the court concluded that the seven original Units remained separate for purposes of the DoR's, and, therefore, that the Extension Document was invalid because a majority of owners in Units 1, 2, 6, and 7, individually, had not voted in favor of extending their DoR's. The court also held that the Extension Document did not apply to Units 3, 4, and 5 because the consent forms referred to an extension of the DoR for Unit 7, only.

The court made a number of rulings with regard to the Coalition's First Amended Complaint. In the first cause of action (for injunctive relief) in the First Amended Complaint, the Coalition sought (1) a temporary restraining order and preliminary injunction preventing the Architectural Committee from taking a number of actions in going forward with the May 2006 vote to extend the UDoR; (2) a preliminary and permanent injunction enjoining the Architectural Committee "from recording any document . . . certifying, declaring or otherwise asserting that the [Unified] Declaration of Restrictions for Costa Serena has been changed, amended or extended by virtue of the May 2006 Election"; and (3) a preliminary and permanent injunction enjoining the Architectural Committee from "conducting any vote or ballot purporting to be for the purpose of amending, changing or extending the term of the [Unified] Declaration of Restrictions of Costa Serena or seeking to amend the Declaration except by an instrument in writing signed and acknowledge[d] by record owners of at least seventy-five percent (75%) of the units located on the real property." The trial court ruled that the Coalition's request for a temporary restraining order and preliminary injunction was moot because the court had already granted that relief. As to the Coalition's other two requests for injunctive relief and its request for declaratory relief, the court granted

summary adjudication in favor of the Coalition, and denied the Architectural Committee's motion for summary adjudication with respect to those requests for relief.

With regard to the Coalition's Supplemental Complaint, the trial court ruled that the Coalition was entitled to summary adjudication of its cause of action for declaratory relief, but that summary adjudication of its claim for cancellation of a written instrument was not appropriate as to either party. The Coalition's claim for declaratory relief involved requests that the court determine the parties' rights and duties pursuant to the UDoR, that the court declare the Amendments to the UDoR to be invalid and without effect, and that the court declare the "purported extension" of the UDoR to be "void, invalid and of no effect."

In ruling with respect to the Coalition's Supplemental Complaint, the court repeated its conclusion that the 1987 Amendment was void *ab initio*, and that the Amendment therefore failed to "combine the seven Units into a single community operating under the DORs of Unit 7." The court further ruled that the "purported extension instruments recorded on 9/25/06 and 11/22/06 were insufficient under ¶16 of the Original DORs for each [Unit]," and that those instruments therefore did not effect an extension of the DoR's past December 31, 2006. Consequently, the court granted the Coalition's motion for summary adjudication as to the cause of action for declaratory relief in the Supplemental Complaint, and on similar grounds, denied the Architectural Committee's motion for summary adjudication as to the same cause of action.

The court denied summary adjudication in favor of either party as to the Coalition's cause of action for cancellation of a written instrument on the grounds that (1) the Coalition failed to present any evidence of damages, and (2) the Architectural Committee failed to present evidence that a majority of the property owners in each of the Units had consented to extending the original DoR's for the individual Units.

The court heard oral argument regarding its tentative decision on November 30, and confirmed the tentative ruling in its entirety that same day. Because there remained triable issues of fact with regard to the Coalition's cause of action for cancellation of a written instrument, the court did not enter judgment in favor of the Coalition at that time.

The Architectural Committee filed a petition for a writ of mandate seeking review of the trial court's summary adjudication order in favor of the Coalition. This court summarily denied the petition.[6]

On January 7, 2008, the Coalition requested dismissal without prejudice of its claim for damages under the cause of action for cancellation of a written instrument (par. 26 of the Supplemental Complaint). On April 4, 2008, the Coalition appeared before the trial court and stipulated to dismissing "any and all causes of action which request cancellation of a written instrument without prejudice." The trial court entered judgment that same day.

The judgment provided:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"That COSTA SERENA ARCHITECTURAL COMMITTEE is hereby permanently enjoined from recording any document asserting that the Declaration of Restrictions for Costa Serena has been changed, amended, or extended by virtue of the May 2006 election.

"That the Declaration of Restrictions for the seven units of COSTA SERENA have expired as of December 31, 2006.

"That COSTA SERENA ARCHITECTURAL COMMITTEE is hereby permanently enjoined from conducting any vote or ballot purporting to be for the purposes of amending, changing, or extending the term of the Declaration of Restrictions of Costa Serena or seeking to amend the Declaration, except by an instrument in writing, signed and acknowledged by record owners of at least seventy-five percent (75%) of the units located on the real property.

"That the 1986, 1987, and 1999 purported amendments to the Declaration of Restrictions are void *ab initio*.

"That Paragraph 28 of the Declaration of Restrictions for the seven individual units cannot be amended.

"That the seven individual units of Costa Serena remain separate, each operating under its own Declaration of Restrictions.

---

[6] On our own motion, we take judicial notice of *Costa Serena Architectural Committee v. Superior Court* (Feb. 28, 2008, D052235), in which we denied the Architectural Committee's petition for a writ of mandate.

"That Plaintiff COSTA SERENA OWNERS COALITION, shall recover from said Defendant attorneys fees and costs in the sum of $_____." (Italics added.)

On April 18, 2008, Jess Diaz, identifying himself as a "party aggrieved by the Judgment entered on April 4, 2008," filed a motion to vacate the judgment. Five days later, on April 23, the Architectural Committee filed a notice of appeal from the judgment (case No. D052903).

On April 30, the Coalition moved for an award of attorney fees and expenses. The Coalition contended that paragraph 20 of each Unit's DoR, which concerned maintenance and repairs, provided for an award of attorney fees to the Coalition as the prevailing party.

The Coalition filed an opposition to Diaz's motion to vacate the judgment on May 9, 2008, arguing that the filing of the notice of appeal terminated the trial court's jurisdiction over the judgment, such that the court was without authority to rule on Diaz's motion to vacate.

On May 29, 2008, the trial court issued a tentative ruling denying Diaz's motion to vacate on the ground that it had lost jurisdiction to rule on the motion when the Architectural Committee filed a notice of appeal. After hearing oral argument on May 30, the court confirmed its tentative ruling.

On May 30, Diaz filed a notice of appeal from the April 4 judgment and the May 30 postjudgment order denying his motion to vacate (case No. D053159).

On June 30, 2008, this court consolidated the two appeals under case No. D052903 and set a briefing schedule accommodating the three parties involved.

On July 11, 2008, the trial court considered the Coalition's motion for an award of attorney fees and expenses. After hearing oral argument from both parties, the court denied the Coalition's motion, without prejudice.

On August 6, 2008, the Coalition filed a notice of appeal from the trial court's attorney fee order (case No. D053553).

The Architectural Committee filed its opening brief in case No. D052903 on September 18, 2008.

Diaz filed his opening brief on October 10, 2008. Diaz raises two main contentions: (1) that the trial court erred in declining to assert jurisdiction to consider his motion to vacate the judgment, and (2) that the judgment is erroneous. Diaz attacks the judgment on a variety of grounds, including that the Coalition's claims are barred by the statute of limitations and laches, that there remain triable issues of material fact as to the intentions of the property owners who signed documents consenting to an extension of the UDoR, and that the Coalition failed to sue the appropriate parties, i.e., the property owners, and that, as a result, those property owners were denied the opportunity to challenge claims that implicate the chains of title on the subject properties.

On October 24, 2008, the City of Oceanside (Oceanside) applied to file an amicus curiae brief in support of the Architectural Committee. In its proposed brief, Oceanside argues that the four-year statute of limitations in Code of Civil Procedure section 343 applies to the Coalition's claims, or, in the alternative, that homeowners associations act in a manner similar to municipal governments and, therefore, should receive the benefit of short statutes of limitations that often apply to local agency land use decisions. Oceanside also requested that this court take judicial notice of resolution No. 2008-P18—a resolution that was adopted at a meeting of the Planning Commission of the City of Oceanside on March 24, 2008. The resolution approves certain land use entitlements for a recent Oceanside condominium development unrelated to Costa Serena.

On November 7, 2008, the Coalition filed a combined opposition to Oceanside's application to file an amicus curiae brief and objection to the city's request for judicial notice.

This court informed the parties that it would consider Oceanside's application to file an amicus curiae brief with the appeal, and that if the court were to grant the application, the court would also specify the time within which the parties would be permitted to file an answer to the brief pursuant to California Rules of Court, rule 8.200, subd. (c)(6).

The Coalition filed a brief in response to the Architectural Committee's and Diaz's opening briefs, in which it addressed the Architectural Committee and Diaz, together, as "Appellants." The Coalition did not respond to Diaz's argument that the trial court should have considered his motion to vacate because the motion was already pending at the time the Architectural Committee filed a notice of appeal. Both Diaz and the Architectural Committee filed reply briefs.

On March 13, 2009, this court ordered that the Coalition's appeal concerning attorney fees (case No. D053553) would be considered with the Architectural Committee's and Diaz's already pending appeal (case No. D052903). In an order filed concurrently with this opinion, we consolidate the Coalition's appeal with the Architectural Committee's appeal for purposes of disposition.

## III.

## DISCUSSION

The trial court granted summary adjudication of three of the Coalition's causes of action (two in the First Amended Complaint and one in the Supplemental Complaint) in favor of the Coalition. The Coalition dismissed its fourth cause of action for cancellation of a written instrument, thereby permitting the trial court to enter judgment in favor of the Coalition on the remaining causes of action. Although the Coalition continued to assert what purported to be only three causes of action (one seeking injunctive relief and two seeking declaratory relief), each cause of action actually encompasses a number of claims. The Coalition essentially challenges the validity of the 1986, 1987, and 1999 Amendments, and the validity of the Extension Document recorded in 2006. The court ruled in favor of the Coalition on all issues, ultimately determining that as of January 1, 2007, there exists no valid declaration of restrictions or similar instrument governing any of the lots in the Costa Serena community.

We conclude that the trial court erred in finding that the 1986, 1987, and 1999 Amendments are void *ab initio*. Our rejection of the trial court's conclusions concerning these Amendments necessarily affects our determination of the correctness of the trial court's ruling with regard to the 2006 Extension Document. As we explain below, we conclude that the Costa Serena community successfully extended the UDoR, such that the lots in Costa Serena remain governed by the restrictions of the UDoR that was created pursuant to the 1987 Amendment and amended thereafter.

Because we decide the issues based on the arguments of the parties, there is no need to address the additional arguments that Oceanside raises in its proposed brief. For this reason, we deny Oceanside's application to file an amicus curiae brief in support of the Architectural Committee, and deny Oceanside's request for judicial notice of an Oceanside resolution.

A. *Standards on summary judgment*

"The standards applicable to appellate court review of a motion for summary judgment are well established." (*Alexander v. Codemasters Group*

*Limited* (2002) 104 Cal.App.4th 129, 139 [127 Cal.Rptr.2d 145] (*Alexander*), citing Code Civ. Proc., § 437c, *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) "We determine de novo whether a triable issue of material fact exists and whether the moving party was entitled to summary judgment as a matter of law. [Citation.]" (*Alexander, supra*, 104 Cal.App.4th at p. 139.) A triable issue of fact exists—and summary judgment is inappropriate—where the evidence reasonably permits the trier of fact, under the applicable standard of proof, to find the purportedly contested fact in favor of the party opposing the motion. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

B. *The Coalition's challenge to the 1986, 1987, and 1999 Amendments is untimely*

The trial court concluded that the Architectural Committee's affirmative defenses challenging the timeliness of the Coalition's claims lacked merit on the ground that all of the Amendments at issue were void *ab initio* and thus could be challenged at any time. The court interpreted paragraph 28 in the original DoR's as requiring "that the acknowledged signatures [of the owners of at least 75 percent of the 'units located on the real property'[7]] be attached to the document itself." Because "it [was] undisputed that no such signatures [were] attached [to the 1986, 1987, or 1999 Amendments], the instruments are void." The court cited *City of Los Angeles v. Morgan* (1951) 105 Cal.App.2d 726 [234 P.2d 319] (*Morgan*) and *Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964 [190 Cal.Rptr. 38] (*Taormina*) in reaching this conclusion.

We have found no authority supporting the trial court's conclusion that the 1986, 1987, and 1999 Amendments are void *ab initio* and that they therefore may be challenged at any time. We specifically reject the court's reliance on *Morgan* and *Taormina*. The trial court apparently misapprehended the limited circumstances in which a court may conclude that an instrument is a complete nullity, as opposed to being voidable pursuant to a timely challenge by a party, due to a deficiency in the instrument's creation.

*Morgan, supra*, 105 Cal.App.2d 726, is inapplicable to this case for a number of reasons. *Morgan* involved a judgment that was determined to be

---

[7] The use of the word "units" in paragraph 28 of the DoR's is odd, since each phase of the development was referred to as a "unit." However, in view of the fact that the DoR for each of the seven Units contained paragraph 28, the most reasonable interpretation is that the word "units" in paragraph 28 refers to the "lots" in each Unit.

void *ab initio* because the defendant in a quiet title action had never been served with the summons and complaint. (*Morgan, supra,* 105 Cal.App.2d at pp. 730–731.) The *Morgan* court noted, "Under the due process clause of the federal Constitution a personal judgment rendered without service of process on, or legal notice to, a defendant is not merely voidable, but void, in the absence of a voluntary appearance or waiver. [Citation.]" (*Morgan, supra,* 105 Cal.App.2d at p. 730.) The court explained: "Where it is contended, as here, that the court had no jurisdiction to enter the decree for want of service upon respondent's predecessor, evidence is admissible to challenge the fact of service. . . . 'It has long been established that a false affidavit of service constitutes extrinsic fraud. A party is thus prevented from having his day in court. Courts of equity will relieve a party from an unjust judgment rendered against him when, without service of process, either actual or constructive, no opportunity has been given him to be heard in his defense. [Citations.]' " (*Morgan, supra,* 105 Cal.App.2d at p. 731.)

The *Morgan* court held that " '[a] *judgment* absolutely void upon its face may be attacked anywhere, directly or collaterally, whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither the basis nor evidence of any right whatever.' " (*Morgan, supra,* 105 Cal.App.2d at p. 732, italics added.)

Because the instruments at issue in this case are not judgments, the rule announced in *Morgan* does not directly apply.

Nor does the rule in *Morgan* apply by analogy to the circumstances that exist in this case. The absence of service on the affected party in *Morgan,* and the defendant's resultant lack of an opportunity to respond to the complaint, meant that the trial court never had jurisdiction over the defendant, and thus, lacked jurisdiction to enter any judgment at all. Here, the Architectural Committee(s) clearly had the authority to amend the DoR's/UDoR in 1986, 1987 and 1999. There has been no allegation that the Amendments were created in secret, or that persons affected by the Amendments were unaware of their existence. In fact, there has been no allegation that the Architectural Committee(s) amended the DoR's/UDoR without providing the affected parties notice of the proposed changes and an opportunity to vote on the matter. Nor is there any allegation that the required number of owners did not approve of any of the Amendments. Because the Coalition has not challenged the authority of the Architectural Committee(s) to enact the Amendments, its challenges do not undermine the very existence of the Amendments, as the challenge to the judgment in *Morgan* did, but rather seek only to redress alleged infirmities in the adoption and recording of the Amendments. *Morgan* involved an invalid act, while this case involves a valid act, the result of which might have been voided if challenged in a timely manner.

In addition, neither the First Amended Complaint nor the Supplemental Complaint contains any allegation that the 1986, 1987 or 1999 Amendments were procured by fraud or some other method that would undermine the validity of the instruments in question from their inception. (See *Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 416 [58 Cal.Rptr.2d 875, 926 P.2d 1061] ["If the entire contract is void *ab initio* because of fraud, the parties have not agreed to arbitrate any controversy; under that circumstance, *Prima Paint* [*v. Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801]] does not require a court to order arbitration."].)

■ Even if the Coalition had alleged fraud in the enactment of the Amendments, the fraud would have to have been one by which the homeowners were induced to agree to Amendments different from the Amendments that were actually recorded. As the court observed in *Erickson v. Bohne* (1955) 130 Cal.App.2d 553, 556 [279 P.2d 619]: " '[T]he courts distinguish between those cases in which a purported instrument never had any legal inception or existence—due to the fact that one party was induced to execute an agreement totally different from that which he apparently made, or where, due to the fraud, there was no execution at all—and those cases in which the agreement was induced by fraudulent misrepresentations or concealments which in no degree make the instrument anything other than it purports to be. In the first case it is clear that the purported agreement is void ab initio and an action to avoid it may be brought at any time, or it may be treated as nonexistent; while in the second case the agreement is voidable and may be rescinded at the election of the party defrauded . . . .' "

The Coalition's only challenge to the Amendments is that they were enacted in a manner that failed to conform to the requirements of the provision that outlined how the DoR's/UDoR could be amended.[8] Since this is the only challenge to the validity of the Amendments, the Coalition's claims would render the Amendments *voidable*, not void *ab initio*. (Cf. *Peyton v. Cly* (1960) 184 Cal.App.2d 193, 196 [7 Cal.Rptr. 504] ["A contract not executed in conformity with the provisions of the statute of frauds is not void but merely voidable. [Citation.]"].)

---

[8] Without explaining the relevance of the issue, the Coalition raises a question in its brief on appeal as to the legality of the age restriction in the DoR, suggesting that Costa Serena's age restriction may be illegal under the Unruh Civil Rights Act (Civ. Code, § 51.2) because Costa Serena does not qualify as senior citizen housing—an exception to the Unruh Civil Rights Act's prohibition against age discrimination. However, the narrow issues presented in this appeal do not include questions relating to Costa Serena's status as a senior citizen community, or the application of the Unruh Civil Rights Act to Costa Serena's UDoR. The Coalition did not allege in its complaint that the age restriction in the UDoR is illegal and/or unconstitutional. Rather, the Coalition challenged the validity of a number of amendments to the

■ The trial court also cited *Taormina, supra*, 140 Cal.App.3d 964, in support of its conclusion that the Amendments were void *ab initio*. However, *Taormina* supports only the limited proposition that amendments to CC&R's (covenants, conditions and restrictions) that are not made pursuant to the procedure "established in the provision" for modifying the restrictive covenants may be voided under certain circumstances. (*Id.* at p. 970.) The case does not speak to the issue here—i.e., whether an amendment that was not enacted pursuant to the procedure set out in the provisions of a declaration of restrictions is void *ab initio*, or merely voidable. The *Taormina* court never expressly considered the question whether the parties' challenge to the amendment at issue in that proceeding would render the amendment voidable or rather, void *ab initio*. The *Taormina* court simply stated: "The trial court found that 75 percent of the owners had not approved the changes embodied in the November 9 CCRs. The changes therefore are not enforceable and to the extent that they purport to make such changes, the November 9 CCRs are void." (*Id.* at p. 970.) The *Taormina* court did not refer to the documents at issue as void *ab initio*, nor did it appear to reach this conclusion. Rather, it appears that the court was simply permitting the plaintiff to *void* a voidable instrument.

At a minimum, *Taormina* simply does not support the trial court's conclusion in this case because it does not state that amendments to CC&R's and/DoR's that are not adopted in conformance with the provisions of those CC&R's and/or DoR's may be challenged on this basis and voided *at any time*. The lawsuit in *Taormina* was filed less than three years after the amendment in question was recorded; there was no statute of limitations issue raised in that case. Thus, whether the provisions in that case were voidable, and thus subject to the statute of limitations, or rather, void *ab initio*, and thus subject to challenge at any time, was immaterial. For these reasons, *Taormina* does not provide authority for the trial court's conclusion that the Amendments in this case were void *ab initio*.

We conclude that the Coalition has not demonstrated that the Amendments were void *ab initio*; at most, the Amendments may be voidable. We therefore consider whether the arguments that the Architectural Committee raised in its summary judgment motion, i.e., challenges to the validity of the 1986, 1987

DoR's/UDoR and the extension of the UDoR, based on the interpretation and application of the DoR's/UDoR provisions. In its points and authorities supporting its motion for summary adjudication in the trial court, the Coalition outlines what is and is not at issue in this case:

"Contrary to rhetoric in prior proceedings, this action **is not** about whether Costa Serena is or is not a senior citizen community! This action is solely about:

"1. Whether the 1987, 1999 and 2006 recorded documents are valid, and

"2. Whether the 2006 election should be permanently enjoined."

We agree with the Coalition's position in the trial court and conclude that the legality of the age restriction in the DoR is also not at issue in this appeal.

and 1999 Amendments, are timely. (See *Marin Healthcare Dist. v. Sutter Health* (2002) 103 Cal.App.4th 861, 879 [127 Cal.Rptr.2d 113] (*Marin*) ["Actions to void contracts are nonetheless subject to the statute of limitations. [Citations.]"].)

■ " 'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the "gravamen" of the cause of action. [Citations.] "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code." [Citation.]' [Citations.]" (*Marin, supra*, 103 Cal.App.4th at pp. 874–875.)

■ The Coalition's causes of action for declaratory and injunctive relief are premised upon its claims that the 1986, 1987 and 1999 Amendments are void. The Architectural Committee contends that the statute of limitations applicable to the Coalition's claims attacking the Amendments is the four-year limitations period provided under Code of Civil Procedure[9] section 343—the general catch-all statute of limitations period. Section 343 provides: "An action for relief not hereinbefore provided for must be commenced within four years after the cause of action shall have accrued." Other courts have applied section 343 to causes of action seeking to cancel a voidable instrument (see *Marin, supra*, 103 Cal.App.4th at p. 878, and cases cited therein), and the Coalition has not asserted that any other statute of limitations applies. Further, the Supreme Court has acknowledged that the four-year limitations period of section 343 has been applied to claims seeking to set aside all kinds of instruments for a variety of reasons: "Citing a broad range of cases, including actions to set aside a deed made under undue influence, a proceeding to set aside a satisfaction of judgment, and actions to set aside void bonds, the [Supreme Court] concluded: 'Although plaintiff contends that laches and lapse of time cannot be defenses in an action to cancel an instrument void because contrary to public policy . . . equitable factors . . . may not be used as a means of avoiding the express mandate of the statute of limitations. We must hold, therefore, that if plaintiff had a cause of action for cancellation, it is now barred by section 343 . . . .' [Citation.]" (*Robertson v. Superior Court* (2001) 90 Cal.App.4th 1319, 1326 [109 Cal.Rptr.2d 650].)

We conclude that the four-year limitations period provided in section 343 applies to the Coalition's claims that the Amendments are invalid.

■ The Coalition did not bring its claims challenging the Amendments within the four-year limitations period. "As a general rule, a statute of limitations accrues when the act occurs which gives rise to the claim

---

[9] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[citation], that is, when 'the plaintiff sustains actual and appreciable harm. [Citation.] Any "manifest and palpable" injury will commence the statutory period. [Citation.]' [Citation.]" (*Marin, supra,* 103 Cal.App.4th at p. 879.)

If the Amendments were, in fact, ineffective as a result of being enacted/adopted in a manner that did not comply with the amendment provisions of the DoR's/UDoR, as the Coalition asserts, then homeowners in the Costa Serena community sustained a "manifest and palpable" injury at the time each of the Amendments was recorded and thereby made effective. Further, the recording of the Amendments served to provide notice to anyone who may have wished to challenge their validity. The Architectural Committee's recording of each of the instruments that contained the Amendments thus triggered the statutory period for bringing an action to invalidate the Amendments, since the recording of the Amendments ensured that homeowners and subsequent purchasers had at least constructive knowledge that there existed amendments to the DoR's/UDoR that purported to change the provisions of the DoR's/UDoR. (See *Citizens for Covenant Compliance v. Anderson* (1995) 12 Cal.4th 345, 355 [47 Cal.Rptr.2d 898, 906 P.2d 1314] (*Citizens for Covenant Compliance*) [recording of CC&R's provides constructive notice of restrictions on property].) The statute of limitations therefore began to run as to each Amendment as soon as the Architectural Committee recorded that Amendment.

The Coalition has offered no evidence that the commencement of the running of the statute of limitations should be tolled for any reason. The Coalition suggests in its briefing that the statutes of limitations for challenges to the Amendments should be tolled because the Coalition "did not have any interest in challenging the 1986, 1987 or 1999 amendments until such time as it appeared Appellants were going to attempt to rely upon those amendments to extend the Declaration of Restrictions in 2006." This clearly does not constitute a valid reason to toll the statute of limitations.

■ All of the information that was available to the Coalition in 2006 concerning the potential invalidity of the Amendments was available to all homeowners in Costa Serena as soon as the Amendments were recorded in 1986, 1987, and 1999. The Architectural Committee conducted business for years under the DoR's and the UDoR, as amended by the Amendments at issue. There is no indication that the Architectural Committee(s) did not interpret the DoR's/UDoR as incorporating the Amendments after they were approved by the owners and recorded by representatives of the Architectural Committee(s). The Coalition is deemed to have had notice of the Amendments at least from the time they were recorded (see *Citizens for Covenant Compliance, supra,* 12 Cal.4th at p. 355), and does not allege that the Amendments were procured by fraud. There is thus no basis for tolling the statute of limitations.

We conclude that the Coalition's claims challenging the 1986, 1987 and 1999 Amendments—brought 20, 19, and seven years, respectively, after the Amendments were passed and recorded—are time-barred. The trial court thus erred in rejecting the Architectural Committee's statute of limitations defense to the Coalition's claims pertaining to the 1986, 1987 and 1999 Amendments.

Because the Coalition's challenges to the Amendments are barred by the statute of limitations, the trial court should have given effect to the amended version of the UDoR, which incorporates all three challenged Amendments.

C. *The Architectural Committee successfully effected an extension of the UDoR by executing and recording a writing evidencing that a majority of lot owners agreed to the extension*

 1. *Under the governing UDoR, the Architectural Committee needed the assent of a majority of owners in the Costa Serena community, as a whole, to extend the DoR*

In granting summary adjudication in favor of the Coalition on its cause of action for declaratory relief in its Supplemental Complaint (seeking to declare the Extension Document void), the trial court ruled that the Extension Document was insufficient to extend the UDoR because the 1987 Amendment was void *ab initio*. Based on the trial court's determination that the 1987 Amendment was void *ab initio*, the court concluded that there had been no unification of the separate DoR's for each of the original Units, and, therefore, that each of the seven Units remained distinct, and operated under its own separate DoR. According to the trial court, each individual Unit had to extend its individual DoR by the consent of a majority of homeowners within that Unit. The trial court concluded that although the Architectural Committee "ha[d] provided competent evidence that a majority [of consents] was received as to the Costa Serena communities as a whole," the Architectural Committee had not demonstrated that "a majority of consents were received as to each separate unit." Instead, the trial court found that the Coalition had provided competent and admissible evidence that the Architectural Committee "did not achieve a majority of consents to extend as to Units 1, 2, 6, and 7."[10]

As we have already concluded, the trial court erred in its determination that the 1987 Amendment was void. The court's determination that each original

---

[10] The court also faulted the Architectural Committee's evidence in that it demonstrated that the consents "purport to extend the DORs of Unit 7 only, not the DORs of each individual unit." As a result, the court concluded that the Coalition had demonstrated that the Extension Document "did not sufficiently describe the real property at issue to effect an extension of the DORs for Units 3, 4, and 5," and, therefore, that there had been no extension of any DoR for any of the Costa Serena Units.

Unit in Costa Serena had to individually agree to extend the applicable original DoR before December 31, 2006, by the consent of a majority of the owners within each Unit was thus also erroneous. As of 2006, the entire Costa Serena community operated under a single governing document—the UDoR. Therefore, pursuant to paragraph 16 of the UDoR, in order to extend the UDoR in 2006, the Architectural Committee was required to execute and record a writing evidencing that a majority of the owners of the lots in the Costa Serena community, as a whole, agreed to the extension.

### 2. *The Architectural Committee presented evidence sufficient to establish that a majority of owners agreed to extend the UDoR*

The Architectural Committee asserts that the trial court should have granted summary judgment in its favor because it presented the court with evidence that a majority of the owners of lots in Costa Serena consented to extend the UDoR, and that the Architectural Committee had thus fulfilled the requirements of paragraph 16 of the UDoR. We agree.[11]

### a. *Interpreting the relevant language in the UDoR*

The Coalition contends that paragraph 16 of the UDoR should be interpreted to require that "any desire to continue the restrictions be made 'in a manner required for a conveyance of real property.' " Although the Coalition fails to explain its interpretation beyond this single sentence, we presume, based on the Coalition's arguments concerning the effect of the Architectural Committee's proffered evidence, that the Coalition means that the UDoR should be read to require that the owner or owners of each lot demonstrate his, her, or their consent to extend the UDoR by way of an individual document that both evidences the owner or owners' consent and identifies the owner or owners and the property in a manner that would be sufficient to convey that real property. In other words, the Coalition maintains that the

---

[11] Again, the parties disagree as to the number of owner consents required to extend the UDoR. In support of its motion for summary judgment, the Architectural Committee submitted evidence that during the 1990's, title to 28 of the original 724 lots in Costa Serena was transferred to Oceanside so that the city could build a road. The Architectural Committee argues that in 2006, there were only 696 voting lots in Costa Serena. If the Architectural Committee is correct, then the number of lot owners needed to consent to an extension is 349. The Coalition asserts that the Architectural Committee has cited no authority for its position that Oceanside's ownership of the lots altered the number of lots given a vote under the UDoR, and contends that the consent of a majority of 724 voting lots is therefore necessary to effectuate an extension of the UDoR. Under the Coalition's theory, the number of lot owners needed to consent to an extension of the UDoR is 363. We need not determine whether the relevant number of lots is 724 or 696, however, because the Architectural Committee offered sufficient evidence that it complied with paragraph 16, demonstrating that 375 owners agreed to extend the UDoR. This number constitutes a majority of lot owners under either scenario.

UDoR requires that the information in each consent form be identical to that found in the deeds to the lots owned by consenting homeowners. We conclude that this interpretation of the relevant provision is unreasonable.

"It is our duty to interpret the deed restriction 'in a way that is both reasonable and carries out the intended purpose of the contract.' [Citation.]" (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1378 [89 Cal.Rptr. 3d 659].) The same rules that govern the interpretation of contracts apply to the interpretation of CC&R's. (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 575 [71 Cal.Rptr.3d 299].) Contracts, in turn, are to be construed in accordance with substantially the same canons of interpretation as statutes. (*Verdier v. Verdier* (1953) 121 Cal.App.2d 190, 193 [263 P.2d 57].) " ' " '[W]e must independently interpret the provisions of the document. . . .' " ' [Citation.]" (*Gray v. McCormick* (2008) 167 Cal.App.4th 1019, 1024 [84 Cal.Rptr.3d 777].)

"The language of the CC&R's governs if it is clear and explicit, and we interpret the words in their ordinary and popular sense unless a contrary intent is shown. [Citations.] The parties' intent is to be ascertained from the writing alone if possible. [Citation.]" (*Harvey v. The Landing Homeowners Assn.* (2008) 162 Cal.App.4th 809, 817 [76 Cal.Rptr.3d 41], fn. omitted.) " 'Where the language of a contract is clear and not absurd, it will be followed. [Citations.]' " (*Templeton Development Corp. v. Superior Court* (2006) 144 Cal.App.4th 1073, 1085 [51 Cal.Rptr.3d 19].)

Paragraph 16, the provision in question, provides in relevant part that the UDoR will expire on December 31, 2006, "unless the owners of a majority of said lots have executed and recorded . . . , in the manner required for a conveyance of real property, a writing in which they agree" that the UDoR shall continue to govern the properties. The most reasonable interpretation of this provision is that the DoR requires that the owners execute and record "in the manner required for a conveyance of real property" a single "writing" that in some way evidences that a majority of the owners have agreed to the proposed extension. This requirement may be met by a document that certifies that a majority of owners of lots in the Costa Serena community have agreed to extend the UDoR. Such an instrument would constitute sufficient evidence that the requirement that a majority of owners have agreed to the extension has been met. As long as that instrument is executed and recorded in the same manner in which a deed or other instrument conveying real property would be executed and recorded, all of the requirements of paragraph 16 of the UDoR are met.

The plain language of paragraph 16 does not require that *each owner* express his/her agreement in a separate document that itself must be "executed and recorded . . . , in the manner required for a conveyance of real property." Rather, a single writing that sufficiently evidences the fact that a majority of owners have agreed to the extension is the document that the UDoR requires be executed and recorded in the same manner in which the conveyance of real property would have to be executed and recorded, in order for the extension to be effective.[12]

> b. *The evidence establishes that the Architectural Committee met the requirements of paragraph 16 and that the UDoR was extended before it expired*

The Architectural Committee submitted evidence of the existence of the required "writing," as well as evidence that the writing was executed and recorded in the official records of the San Diego County Recorder's Office in the same manner in which a conveyance of real property would be executed and recorded. Specifically, the Architectural Committee submitted a document, recorded September 25, 2006, entitled "EXTENSION OF DECLARATION OF RESTRICTIONS." The document includes a notarized certification of the extension, signed by DeLoris Devine, chairperson of the Architectural Committee, which states, "The extension of DECLARATION OF RESTRICTIONS has been consented to by at least a majority of the owners of the lots in accordance with Section 16 of the DECLARATION OF RESTRICTIONS. The consents are collectively attached hereto as Exhibit '1' to this Extension of DECLARATION OF RESTRICTIONS." Immediately following Devine's certification is the Extension Document itself.

The Extension Document identifies each DoR for each of the original Units by its official record number and identifies each of the properties in Costa Serena by referencing the lots by Unit, as originally identified by the individual DoR's for the Units. The Extension Document then states: "The owners of a majority of the lots subject to the DECLARATION OF RESTRICTIONS, and any valid amendment(s) thereto, hereby extend the DECLARATION OF RESTRICTIONS, and any valid amendment(s) thereto, until December 31, 2039."

---

[12] The Coalition suggests that if there exists any "perceived ambiguity" in the UDoR, the Architectural Committee should "not get to benefit from" such ambiguity. The only support that the Coalition offers for this assertion is the following claim: "There is no basis to interpret the Declaration of Restrictions against Respondent [Coalition]." However, since neither of these parties drafted paragraph 16 (which has not been amended since the DoR's were drafted by the original developer of Costa Serena), neither party should receive a more favorable interpretation by virtue of the fact that it did not draft the language at issue.

The Extension Document is signed by four members of the Architectural Committee, and each member's signature is notarized. The Extension Document is clearly a "writing" that evidences that a majority of owners in Costa Serena have agreed to the extension. The document was executed and recorded in "the manner required for conveyance of real property" since it included all of the necessary formalities: it contained a sufficient description of the properties affected by the extension, identified the restrictions on the properties that were being extended, was signed and notarized, and was recorded at the county recorder's office. The effect of the execution and recordation of the Extension Document is that any person having title to or interested in acquiring title to an affected property has, at a minimum, constructive notice that the residences in Costa Serena continue to be governed by the UDoR. (*Citizens for Covenant Compliance, supra*, 12 Cal.4th at p. 355.)

In its ruling on the Architectural Committee's motion for summary judgment/adjudication, the trial court found that the Architectural Committee obtained the consent of a majority of the owners in Costa Serena, and that the Architectural Committee presented sufficient evidence to establish this fact. In the part of the court's order rejecting the Architectural Committee's argument that it was entitled to judgment as to the first cause of action (declaratory relief) in the Supplemental Complaint, the court states, "Defendant has provided competent evidence that a majority [of consents] was received as to the Costa Serena communities as a whole." However, having erroneously concluded that the 1987 Amendment was void, the trial court proceeded to conclude that the Architectural Committee's evidence was insufficient to establish that it had obtained the consents of a majority of the owners within each separate Unit. The trial court's finding that the Architectural Committee provided competent evidence that a majority of owners of property in the Costa Serena community as a whole had agreed to extend the UDoR is sufficient to support a judgment in favor of the Architectural Committee.

Further, the parties do not dispute that 375 lot owners did in fact agree to extend the UDoR. Even the Coalition agrees that the consents sufficiently establish the intent of the homeowners who signed them: "In any event, the intention of the homeowners who signed a consent to extend the Declaration of Restrictions is not in issue. It can be assumed a homeowner who signed a consent form wished to extend the Declaration of Restrictions." According to the Coalition, the question is not whether there is sufficient evidence to establish that a majority of the owners agreed to extend the UDoR, but, rather, whether "that homeowner compl[ied] with the requirements of the Declaration of Restrictions." Based on the most reasonable interpretation of the UDoR, we conclude that it is not necessary that each homeowner have executed and recorded a consent document that would be sufficient to convey

property in order to comply with the UDoR's extension provision. The Architectural Committee and the homeowners, as a whole, complied with the requirements of paragraph 16 of the UDoR by having the Architectural Committee representatives sign and record a writing evidencing that a majority of the owners of lots in Costa Serena agreed to extend the UDoR. This is sufficient to meet the procedural requirements of paragraph 16.

No additional evidence of the owners' signatures, consent forms, or any other documents were required, since Devine's certification is sufficient to establish that a majority of owners of lots in Costa Serena agreed to extend the UDoR. This is particularly true in view of the fact that the Coalition does not dispute that the owners who signed the consent forms agreed to the extension. In the face of the recorded "writing" that the Architectural Committee submitted, the Coalition did not argue or present evidence that Devine's certification in the Extension Document that a majority of owners of lots in Costa Serena had consented to extend the UDoR was somehow invalid, mistaken, or fraudulent. The Coalition thus has not placed in dispute the fact that a majority of owners of lots in Costa Serena did in fact agree to extend the UDoR.

Despite conceding that a majority of owners agreed to extend the UDoR, the Coalition objected to the form of more than 200 of the consent forms that the Architectural Committee submitted as evidence to support its motion for summary judgment. In a ruling that seems to conflict with the trial court's finding that the Architectural Committee had submitted sufficient proof that a majority of owners of Costa Serena agreed to the extension, the trial court sustained the Coalition's objections to 70 of the consent forms that the Architectural Committee submitted. This ruling left the Architectural Committee with evidence of only 305 owner consents. We conclude that the trial court erred in sustaining the Coalition's objections to the consent forms.[13]

We review a trial court's rulings on evidentiary objections for an abuse of discretion. (*Walker v. Countrywide Home Loans, Inc.* (2002) 98 Cal.App.4th 1158, 1169 [121 Cal.Rptr.2d 79].) Although the abuse of discretion standard gives the trial court substantial latitude, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' " (*City of Sacramento v. Drew*

---

[13] We are not convinced that the evidence of the consent forms was required at all, given the fact that the Architectural Committee provided sufficient evidence of a "writing" that met the requirements of paragraph 16, and that the Coalition never challenged the veracity of Devine's certification that a majority of homeowners in Costa Serena had agreed to extend the DoR. Nevertheless, to the extent that the Coalition's claims can be seen as a challenge to the sufficiency of Devine's certification of the Extension Document, these excluded consent forms are relevant, and, as we conclude, the trial court erred in excluding them.

(1989) 207 Cal.App.3d 1287, 1297 [255 Cal.Rptr. 704].) "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." (*Ibid.*) Here, the trial court appears to have erroneously interpreted the UDoR, and on this basis, rejected some of the consent forms. In doing so, the court incorrectly applied legal principles of contract interpretation. The trial court's evidentiary rulings premised on its erroneous interpretation constitute an abuse of the court's discretion.

The Architectural Committee included the 375 consent forms in two exhibits to the Extension Document.[14] Each consent form was in the same format. In the first paragraph, the consent form states, "The undersigned, is/are the Owner(s) of the following real property located within San Diego County, California: . . . ." Each consent form then identifies the property by street address. The second paragraph of each form provides a legal description of each property, in a form similar to the following example from consent No. 1: "Lot 3, inclusive, of COSTA SERENA UNIT NO. 1, in the City of Oceanside, County of San Diego, State of California, according to Map thereof no. 6892 filed in the Office of the County Recorder of said San Diego County on March 31, 1971."

The third paragraph states: "Said real property is subject to a DECLARATION OF RESTRICTIONS which was recorded in the official records of San Diego County, California, on July 6, 1973, as Instrument No. 186901." The fourth paragraph of each consent form affirms the owner's or owners' consent, stating, "I/we, by affixing our signature below, hereby consent to extend the DECLARATION OF RESTRICTIONS, and any valid amendment thereto, until December 31, 2039." The Architectural Committee also submitted to the trial court copies of the deeds of each of the properties for which an owner had signed a consent form.

The Coalition objected to a large number of the consent forms on the ground that the consents suffered from one or more of three identified deficiencies: (1) discrepancies between the legal descriptions of the properties provided on the consent forms and those on the deeds for those properties; (2) discrepancies between the signatures on the consent forms and the names on the deeds; and (3) the form was signed by only one of two record owners or trustees. For example, the Coalition's grounds for objecting to consent No. 1 was, "Lacks foundation.[15] Legal description of the property and the

---

[14] The two exhibits to the Extension Document were recorded on different dates, September 25, 2006, and November 22, 2006.

[15] The Coalition made the same foundation objection to every consent form to which it objected. However, because the trial court sustained the Coalition's objections to only some of the consent forms, we infer that the court did not exclude these forms on the ground that they

Deed does not match that in the Consent." Another example of the type of objection the Coalition raised was its objection to consent No. 90 on the following grounds: "Lacks foundation. Signature on Consent does not match name on Deed." The Coalition similarly objected to consent No. 281, on the following grounds: "Lacks foundation. Consent not signed by one of the owners per Deed." The Coalition's position was that consents that suffered from such discrepancies were insufficient to "convey real property," and thus did not meet the requirements of paragraph 16 of the UDoR, rendering the consents invalid and inadmissible.

The Coalition's presumption that the consent forms had to be in precisely the same form as a document intended to convey real property is based on an unreasonable interpretation of paragraph 16 of the UDoR. The Coalition seems to have persuaded the trial court to read the words "in the manner required for a conveyance of real property" to refer to each property owner's, or owners', consent form.

The court appears to have determined that each consent form had to describe the relevant property in a manner identical to the description of the property in the deed establishing the consenter's ownership, and had to be signed by each owner in exactly the same manner as he or she is identified in the deed. For example, the court sustained the Coalition's objection to the consent form signed by "Elenore L. Buitenman" and "Charles T. Buitenman," apparently on the basis that the deed names "Elenore Louise Buitenman" and "Charles Taze Buitenman" as the owners of the property, using middle names rather than initials. Similarly, the court rejected all of the consent forms signed by owners of lots that had originally been part of Unit 7 because those consent forms incorrectly identified the plat map number in the legal descriptions of the properties as 6939, while the true plat map number is 6940. The court rejected these consent forms in spite of the fact that each form contained the street address of the owners' property.

As we have already explained, this interpretation misconstrues the language of paragraph 16. The UDoR cannot reasonably be read to require that the consent forms include a legal description of the properties. Nor can it be understood to require that each individual owner consenting to the extension sign his or her name in exactly the same manner as he or she took title to the property. The consent forms that the Architectural Committee collected are more than sufficient to establish that a majority of Costa Serena lot owners agreed to the Extension Document. Each individual owner certified that he or

lacked foundation. To the extent that the court may have sustained some of the Coalition's objections on foundational grounds, this would have been an abuse of discretion, since the Architectural Committee laid the same foundation for the excluded forms as for the forms that the court did not exclude.

she was the owner of the property, and each consent form identifies the property by address. There is no allegation that the persons who signed the consent forms are not the owners of the properties.

Reading the UDoR to mean that the consent of an owner who signed his name "Floyd A. Beatty" on his consent form will not be counted because the deed to his property identifies him as "Floyd Andrew Beatty" would lead to an absurd result, particularly where Floyd A. Beatty attested to the fact that he owns the relevant property. It is clear that Floyd A. Beatty is Floyd Andrew Beatty, and the Coalition has presented no evidence that he, or any of the other individuals who signed the consent forms, was not an owner who was entitled to vote to extend the UDoR.

A majority of owners agreed to extend the UDoR, as evidenced by the signed consent forms that the Architectural Committee filed as exhibits to the recorded Extension Document and presented to the court. As long as the consent forms identify the person or persons who signed the form, reasonably identify their properties (by, for example, providing the street address), and indicate that the person or persons owns or own the identified property, the forms are sufficient. All of the consent forms that the Architectural Committee submitted meet these requirements. The consent forms are relevant to determining whether a majority of owners agreed to extend the UDoR, and are admissible in evidence. The trial court thus erred in sustaining the Coalition's objections to some of the consent forms.

We conclude that the trial court erred in entering judgment in favor of the Coalition and not entering judgment in favor of the Architectural Committee. The judgment must be reversed and a new judgment entered in favor of the Architectural Committee.

D. *Jess Diaz's appeal from the trial court's order denying his motion to vacate is moot*

Our disposition of the Architectural Committee's appeal from the judgment in this case renders moot Diaz's appeal from the trial court's denial of his motion to vacate the judgment. The judgment that Diaz wishes to have vacated is no longer in effect. Therefore, neither the trial court nor this court can grant him the relief that he requests in his motion to vacate, or in his appeal from the denial of that motion.

■ " ' "It is this court's duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before

it. . . . ." ' . . ." . . . " 'When no effective relief can be granted, an appeal is moot and will be dismissed.' " ' " (*Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1215 [78 Cal.Rptr.3d 572], citations omitted.) "Accordingly, because our decision on the matter would be academic" (*ibid.*), we express no opinion as to the trial court's jurisdiction to consider a filed and pending motion to vacate a judgment after another party has filed a notice of appeal from the same judgment.

### E. *The Coalition's appeal concerning attorney fees*

Our reversal of the judgment and our remand of the case with directions to enter judgment in favor of the Architectural Committee renders moot the Coalition's consolidated appeal challenging the court's refusal to award it attorney fees as the prevailing party, since the Coalition is no longer the prevailing party in this litigation. (See *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 831 [171 Cal.Rptr. 604, 623 P.2d 165] [consolidated appeal from special order after judgment taxing costs relating to attorney fees dismissed as moot after underlying judgment confirming award of arbitrator was reversed]; see also *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.* (2006) 144 Cal.App.4th 1175, 1195 [51 Cal.Rptr.3d 144] [reversing trial court's order denying defendant's motion for judgment notwithstanding the verdict, vacating judgment in favor of plaintiff, and dismissing as moot plaintiff's appeal from a postjudgment order denying attorney fees]; *Kreutzer v. City and County of San Francisco* (2008) 166 Cal.App.4th 306, 312, fn. 3 [82 Cal.Rptr.3d 644] [stating that the court would be entering a "separate order in the [defendant's] attorney fees appeal dismissing it as moot" after reversing a judgment for plaintiff]; *Kotla v. Regents of University of California* (2004) 115 Cal.App.4th 283, 296, fn. 10 [8 Cal.Rptr.3d 898] [after reversing judgment and remanding case for new trial, court dismissed as moot defendant's appeal from postjudgment order awarding attorney fees].)

## IV.

## DISPOSITION

The judgment of the trial court is reversed. The case is remanded to the trial court with instructions to enter judgment in favor of the Architectural Committee.

Jess Diaz's appeal from the denial of his motion to vacate, and the Coalition's appeal from the denial of its motion for attorney fees, are dismissed.

The Architectural Committee is entitled to costs on appeal for both its appeal and its opposition to the Coalition's appeal. Diaz is to bear his own costs on appeal.

McConnell, P. J., and McIntyre, J., concurred.