Filed 5/29/24  In re K.C. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re K.C. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> M.C., <br><br> Defendant and Appellant. | E082325 <br><br> (Super.Ct.Nos. J288699, J289057, J289058) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Plaintiff and Respondent.

1

Since 2016, defendant and appellant M.C. (mother) has had intermittent custody of her children.  At the contested 18-month review hearing on October 11, 2023, the juvenile court reverted her visitation from unsupervised to supervised, but maintained the permanent plan to return the children to her.  Mother immediately appealed the order; however, contrary to the notice of appeal, she does not present any substantive argument challenging supervised visitation.  Rather, the only issue raised is the failure to comply with the inquiry requirements set forth in the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and Welfare & Institutions Code[1] section 224.2.  In response, the San Bernardino County Children and Family Services (department) contends the appeal should be dismissed on the grounds of nonjusticiability and there was no expanded duty of initial inquiry because the children were detained pursuant to a warrant.  (Welf. & Inst. Code, § 340.)  Mother replies by citing *In re H.V.* (2022) 75 Cal.App.5th 433, which considered the claim of inadequate inquiry into a child's Indian ancestry[2] on the merits.  (*Id*. at p. 438.)  We choose to exercise our "inherent discretion" and address mother's issue.  (*Conservatorship of K.Y.* (2024) 100 Cal.App.5th 985, 989.)  As we explain, we affirm.

---

[1] All undesignated section references are to the Welfare and Institutions Code.

[2] Because ICWA uses the term "Indian," we may do the same for consistency, even though we recognize that "other terms, such as 'Native American' or 'indigenous,' are preferred by many."  (*In re Benjamin M*. (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2

## I. PROCEDURAL BACKGROUND AND FACTS

A.      *Riverside County Dependency of T.C. and K.C.*

In April 2016, Riverside County Department of Public Social Services (DPSS) initiated dependency proceedings under section 300, subdivision (b), alleging T.C. (born in 2008) and K.C. (born in 2014) were at risk of abuse and/or neglect due to their parents' unresolved history of abusing controlled substances, neglect of the educational/developmental needs of T.C., mother's transient lifestyle, and father's absence. According to the detention report filed April 14, 2016, both parents denied having any Native American ancestry. Father (A.C., father C.) was residing with the paternal grandmother (PGM), paternal stepgrandfather, paternal aunt, paternal cousins, and two paternal uncles.[3] The social worker spoke to PGM who "denied having any Native American Ancestry."

The detention hearing was held on April 15, 2016; both parents, the paternal grandparents, and the paternal aunt appeared. The juvenile court found father C. to be the presumed father of the children.[4] The parents completed Judicial Council Forms, form ICWA-020 (ICWA-020); father denied Native American ancestry, but mother stated she "may have Indian ancestry" "through [her] grandmother [J.E.]" Mother did not know her

---

[3] PGM was a foster parent for 30 years. At the time of the hearing, she was the legal guardian of the paternal uncles, one "age 31 who was diagnosed as mentally challenged when" PGM began fostering him at age two, and the other age "19, [who] was diagnosed with cerebral palsy spastic quad at birth" and began living with PGM when he was one year old.

[4] Father C. married mother on October 15, 2011, after T.C.'s birth, but prior to K.C.'s birth.

grandmother's date of birth or the name of the tribe. The court found that it "appears as though Indian children may be involved," and ordered DPSS "provide notice to all identified tribes, and there are none. . . . At a minimum, the Bureau of Indian Affairs [(BIA)] will be required to be notified[, and n]otice must be filed with the Court." The children were detained, and the court ordered reunification services and supervised visitation.

On May 10, 2016, DPSS notified BIA that dependency proceedings had been initiated on behalf of T.C. and K.C. The notice identified both parents, the PGM, the maternal grandfather (D.E.) and his birthdate, and the maternal great-grandmother (J.E.). According to the jurisdiction/disposition report filed May 11, 2016, mother was born to Y.G. and D.E., who were never married. Mother was primarily raised by her maternal grandmother, who is deceased, and she (mother) has an older half brother and younger half sister. Father C. was adopted by B.C (PGM) and R.C.; they are divorced. Father C.'s name is on the children's birth certificates.

At the contested jurisdiction hearing on May 16, 2016, DPSS filed a second amended dependency petition, informed the juvenile court that "ICWA noticing was filed [on] May 10, 2016[,] . . . ask[ed] the Court find notice proper, and that ICWA may apply at this point." The court sustained the allegations, adjudged the children to be dependents of the court, and found "the children are not Indian children. The Indian Child Welfare Act does not apply." Subsequently, the children were placed with PGM. In review reports, DPSS reiterated the court's prior finding that ICWA did not apply, adding it "has not been provided with additional information regarding possible Indian ancestry as to

4

the children." Both parents continued to deny Indian ancestry, and the court maintained that ICWA did not apply. By April 2017, PGM was granted legal guardianship, and the dependency was terminated.[5]

From April 2017 through December 2020, the children lived with PGM. During this time, they participated in extended visits with mother. On December 24, 2020, PGM died, and legal guardianship terminated by operation of law. Dependency was reinstated, the children were placed in mother's care on an extended visit, pending drug test results, and DPSS was ordered to prepare a new case plan. Since mother was living in San Bernardino County, the case was being prepared for transfer.

B.      *San Bernardino County Dependency of E.G., T.C. and K.C.*

On April 1, 2021, department initiated dependency proceedings under section 300, subdivisions (b)(1), (g), and (j), alleging E.G., mother's third child (born in 2018), was at risk of abuse and/or neglect due to his parents' unresolved history of substance abuse, domestic violence in the home, mother's transient lifestyle, father's absence, and the removal of his half siblings (T.C. and K.C.) from mother's custody. E.G.Jr. was identified as an alleged father; mother had a restraining order against him, and he was not involved in the child's life.[6] Regarding ICWA, department referenced mother's April 28, 2016 denial of any Native American ancestry, and father E.G.Jr.'s May 7, 2018 denial of Native American ancestry to a Riverside County DPSS social worker, and stated ICWA

---

[5] The paternal stepgrandfather died on August 16, 2016.

[6] The restraining order, which was set to expire on August 5, 2023, identified mother's three children as additional protected persons.

5

does not apply. On April 2, 2021, mother denied having Native American ancestry, stated E.G. was placed with her, and identified D.E. (maternal grandfather) and J.M. (maternal aunt) under additional family contact information.

At the hearing on April 2, 2021, the juvenile court (Judge Erin Alexander) asked, "Mom, do you have any Native American ancestry or Indian heritage as far as you know?" Mom replied, "No." Mother identified E.G.Jr. as E.G.'s father and stated that he signed the child's birth certificate. No maternal or paternal relatives were present. The court detained E.G. with mother on the condition she not supervise father E.G.Jr.'s visits and abide by the restraining order.

According to the jurisdiction/disposition report for E.G.'s dependency, department stated, "At the Detention hearing calendared on April 2, 2021, [mother] denied Native American ancestry. On April 14, 2021, the [social worker] completed further inquiry and [mother] further denied Native American ancestry." Father E.G.Jr.'s whereabouts were unknown, and department filed a declaration of due diligence identifying its search efforts. Department was unable to further inquire if father E.G.Jr. has any Native American ancestry. Mother identified the maternal grandfather, D.E., as part of her support group. The juvenile court declared E.G. a dependent of the court, found E.G.Jr. to be the presumed father, found ICWA does not apply, and allowed the children[7] to remain in mother's custody under family maintenance.

---

[7] On April 29, 2021, the Riverside County Juvenile Court reinstated dependency of T.C. and K.C.—who were in mother's custody—and transferred the case to San Bernardino County.

In the subsequent family maintenance status review report for T.C. and K.C. filed October 29, 2021, department stated, "The Indian Child Welfare Act does or may apply. On 10/27/2021, [the social worker] inquired of the mother . . . regarding ICWA, [she] denied Native American ancestry." In the family maintenance status review report for E.G. filed November 29, 2021, department stated, "The Indian Child Welfare Act does not apply. On 5/25/2021 at the further Jurisdiction Disposition Hearing, the court found that the child does not come under the provisions of ICWA." Father E.G.Jr.'s whereabouts were listed as "Confidential Address." The children remained in mother's custody.

On January 20, 2022, section 387 supplemental petitions were filed for each child based on mother's failure to complete her family reunification services.[8] Department stated, "The Indian Child Welfare Act does not apply." On January 21, 2022, father C. filed an ICWA-020, denying Indian ancestry. He identified C.W. as the paternal uncle to T.C. and K.C. At the detention hearing, the juvenile court (Steven A. Mapes) asked, "Mom, do you have Native American ancestry?" Mother replied, "No." The court asked father C., "Do you have Native American ancestry, sir?" Father C. replied, "No, sir, I don't." The court detained the children and removed them from mother's custody. The clerk's minutes state, "The court makes ICWA inquiry as to American Indian heritage of mother and father [C.] Mother and father [C.] indicate(s) there is no Indian heritage."

---

[8] The petitions were amended on February 10, 2022.

The jurisdiction/disposition report filed February 14, 2022, states, "It was found at the 05/25/2021 Further J/D Hearing, the children do not come under the provisions of the Indian Child Welfare Act." There was no address or phone number provided for father E.G.Jr., and the department noted that "[n]o relatives have come forward to consider for placement." The allegations in the amended section 387 petitions were sustained, the court found that ICWA does not apply, and the children were removed from mother who was provided reunification services. The children were placed with Ms. D. on January 21, 2022.

The status review report filed August 11, 2022, repeated the language in the jurisdiction/disposition report regarding ICWA not applying, and the department added, "The mother . . . completed the CFS 30 on 4/2/2021 indicating that there was not known Native American ancestry in her family. [Father C.] completed the CFS 30 on 1/21/2022 indicating that there was not known Native American ancestry in his family." Father E.G.Jr.'s whereabouts remained unknown. The department recommended, and the juvenile court ordered, the children remain with Ms. D. and mother continue to receive reunification services. It was agreed that termination of parental rights would be detrimental to the children. This status quo continued through October 2023.

The 12-month status review report filed January 23, 2023, repeated the language in the jurisdiction/disposition report regarding ICWA not applying, and noted mother's date of inquiry was April 2, 2021, and father C.'s date of inquiry was January 21, 2022; both denied Indian ancestry. Department added, "Continue to inquire" under "Follow up Action." Father E.G.Jr.'s whereabouts remained unknown. In the 18-month status

review report filed August 1, 2023, department noted that, "[d]uring this reporting period, there have been no additional family members identified to discuss Native American ancestry" and repeated the juvenile court's prior finding that ICWA does not apply. Again, department stated, "Continue to inquire" under "Follow up Action."

Prior to October 2023, mother engaged in unsupervised visitation. On October 5, department recommended supervised visitation because she had relapsed; however, it was not opposed to standing orders to return visits to unsupervised. On October 11, the juvenile court "revert[ed mother's] visits back to supervised," but added standing orders for "unsupervised visits and placement with mother." Mother appeals "visitation reverting to supervised."

## II.  DISCUSSION

Although mother's notice of appeal challenges the change in visitation order, her opening brief offers no substantive argument for reversal of that order. Rather, she contends department and the juvenile court failed to satisfy their duties of initial inquiry regarding ICWA and related California law as to the children's maternal and paternal relatives. (*In re Isaiah W*. (2016) 1 Cal.5th 1, 10 [parents may challenge ICWA's inapplicability from a subsequent order even if they did not raise such challenge in an appeal from the initial order].) Department argues the appeal should be dismissed because it fails to state a justiciable controversy for which this court can offer relief since any ICWA inquiry error does not warrant reversal of the visitation order, and department remains under a continuing duty to investigate claims of Indian ancestry. We address the merits of mother's issue and affirm.

9

*A. Justiciability.*

An important requirement for justiciability is the availability of "effective" relief—that is, the prospect of a remedy that can have a practical, tangible impact on the parties' conduct or legal status. This court must decide actual controversies by a judgment that can be carried into effect, and not give opinions upon moot questions or abstract propositions or declare principles or rules of law that cannot affect the matter in issue in the case before us. (*Costa Serena Owners Coalition v. Costa Serena Architectural Com*. (2009) 175 Cal.App.4th 1175, 1205-1206.) When the court cannot grant effective relief to the parties to an appeal, the appeal must be dismissed. (*Id.* at p. 1206.)

Nonetheless, "we have inherent discretion to resolve an appeal on the merits where 'the issues in [the] case are of public interest, will continue to evade review, and are likely to recur, both in general and as to the petitioner specifically.'" (*Conservatorship of K.Y.*, *supra*, 100 Cal.App.5th at p. 989.) We conclude that this appeal presents such a case. Therefore, we resolve the ICWA inquiry issue on the merits.

*B. Inquiry Duties Under ICWA.*

"ICWA establishes minimum national standards 'for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture.' [Citation.] Under California law, the juvenile court and county child welfare department have 'an affirmative and continuing duty to inquire' whether a child subject to a section 300 petition may be an Indian child. [Citations.] 'This continuing duty can be divided into

10

three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.' [Citation.]" (*In re Samantha F*. (2024) 99 Cal.App.5th 1062, 1066.)

"'In [*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048], the court explained that . . . section 224.2, "creates three distinct duties regarding ICWA in dependency proceedings. First, from the [Department]'s initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. [Citation.] Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the [Department] 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citation.] Third, if that further inquiry results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply. [Citations.]"' [Citation.]"

"'At the first step, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the [Department], the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.'" [Citation.]' [Citation.]"

"We review claims of inadequate inquiry into a child's Indian ancestry for substantial evidence. [Citation.]" (*In re H.V.*, *supra*, 75 Cal.App.5th at pp.436-438.) Under that standard, "'[w]e review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those

11

findings. [Citations.] Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw.'" (*In re J.N.* (2021) 62 Cal.App.5th 767, 774.)

*C. Analysis.*

We begin by recognizing that this dependency was initiated by DPSS in Riverside County, but transferred to department in San Bernardino County. According to the record, we find substantial evidence supports the juvenile court's determination that ICWA does not apply. When department received this case, they were aware that in May 2016, DPSS notified BIA of dependency proceedings, identifying mother, father C., PGM, the maternal grandfather (D.E.) and his birthdate, and the maternal great-grandmother (J.E.). No tribe intervened. Nonetheless, with the birth of E.G., department initiated new ICWA inquiries. Both mother and father C. denied any Native American ancestry via form ICWA-020, their interviews with the social worker, and their responses to the court's specific questions. No paternal or maternal relatives were interviewed because none presented themselves at any court hearings in San Bernardino County. Even if we consider mother's April 2, 2021, identification of D.E. and J.M. in her CFS 030 form, we note that at that time, the children remained in her custody under a family maintenance plan. It wasn't until January 21, 2022, that they were detained outside her home. However, the plan was to return them to her custody because department advised termination of parental rights would be detrimental to the children. Given the specific facts of this case, we find insufficient information to suggest there was an inadequate

12

inquiry into the children's Indian ancestry. Under the deferential standard of review, we do not disturb the juvenile court's finding that ICWA does not apply on this record.

Nonetheless, department acknowledges its continuing duty to investigate whether the children could be Indian children. More importantly, the current permanent plan of returning the children to mother's custody continues. Thus, until the mother's custody of the children is restored, or the permanent plan changes, department must continue investigating the possibility the children may be Indian children. On appeal, mother identifies the following relatives who "need to be contacted" by department: the maternal grandfather D.E., and the maternal aunt J.M. As the dependency remains open, the department remains under a statutory duty to interview them. (*In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744 [child services agencies should interview extended family members whose information is "readily obtainable"].)

Regarding the paternal relatives that mother identifies as needing to be contacted by department—paternal uncles C.W., D., and T.; a paternal aunt P.C.; and paternal cousins (P.C.'s children)—the record is void of any claim by father C. that he may have Indian ancestry, or that any of the paternal relatives were present during the hearings held in San Bernardino County. As previously noted, in 2016, notice was sent to BIA and no tribe intervened. Moreover, a DPSS social worker spoke to PGM who "denied having any Native American Ancestry," and the paternal uncles (D. and T.), aunt P.C., and cousins (P.C.'s children) were living with PGM at that time. Had other information been available regarding potential Indian ancestry on father C.'s side, PGM would have had

13

access to it.  Unless and until there is new information, department has complied with its statutory duty of investigating paternal relatives for Indian ancestry.

To summarize, substantial evidence supports the juvenile court's conclusion that, to date, department has complied with its statutory duty of inquiring into the children's Indian ancestry as there is no plan to permanently remove the children from mother's custody.  Even so, department should interview extended family members whose information is "readily obtainable."  According to mother, these family members are D.E. and J.M.  She asks for special instructions[9] to both department and the court.  It is sufficient to state that we expect reasonable efforts but no specific instructions are necessary.  According to the record, department and the juvenile court are aware of, and continue to comply with, the statutory duty to investigate the children's Native American ancestry.

---

[9]  Mother requests the ICWA findings be vacated, and on remand, (1) department be instructed to interview the children's extended family members "including at least mother, maternal great-grandmother, C.W., and maternal great-grandfather for the purpose of obtaining information," document its investigation (including interviews with family members and attempts to conduct such interviews), and comply with the section 224.3, and (2) the juvenile court be instructed to conduct a noticed hearing to review the adequacy of department's investigation, and determine whether department's investigation was adequate.

14

DISPOSITION

The October 11, 2023, order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

CODRINGTON
J.

RAPHAEL
J.

15